## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARKET AMERICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. _____ |
| ) | |
| GOOGLE, INC. and ) | JURY TRIAL DEMANDED |
| LTECH CONSULTING, LLC, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Market America, Inc. hereby complains against Google, Inc. and LTech Consulting, LLC as follows:

## PARTIES AND JURISDICTION

1.  Plaintiff, Market America, Inc., (hereinafter "Market America") is a North Carolina corporation with its principal place of business located at 1302 Pleasant Ridge Road, Greensboro, North Carolina.

2.  Defendant Google, Inc., (hereinafter "Google") is a Delaware corporation with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California.

3.  Defendant LTech Consulting, LLC, (hereinafter "LTech") is a New Jersey limited liability company with its principal place of business located at 400 Somerset Corporate Blvd., Suite 500, Bridgewater, New Jersey.

4.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) under diversity of citizenship, in that the matter in controversy

exceeds $75,000 exclusive of interest and costs, and each of the parties are incorporated in different states and have principal places of business in different states.

5. This Court has personal jurisdiction over the Defendants in that: (1) Defendant Google is a Delaware corporation; and (2) Defendant LTech has represented its desire that any dispute arising out of the subject matter of this complaint be resolved in the State of Delaware, and has thereby waived and is estopped from contesting personal jurisdiction.

## STATEMENT OF FACTS

**Market America Seeks to Expand the Offerings Available to its Customers**

6. Market America is an Internet marketing and product brokerage company that has pioneered an online shopping portal similar to Amazon.com, but with each customer having an online contact or guide on the Internet, a concept known as One-to-One marketing. Market America seeks to combine the power of the Internet with the power of people to create a preeminent online shopping destination. The site, along with affiliated overseas sites, such as Market Australia and Market Hong Kong, serves millions of customers, who are supported by tens of thousands of Customer Managers, also called "Independent Distributors," worldwide.

7. In November of 2007, Market America and its affiliated overseas sites were in the process of dramatically expanding the scope of the offerings available on their sites, by allowing visitors to the sites to search for and identify not only Market America-branded products, but also the millions of products sold by Market America partner stores, referred to as "premier partners" or "affiliate partners." Visitors could then link to those affiliate partner sites and complete their purchase. Through the

creation of Market America's "Universal Shopping Cart," the purchase of an item offered by a premier partner store could, for many stores, be completed on the Market America site itself, with payment then made by Market America to that partner.

8. To enable its visitors to access the millions of products available through these partner stores, Market America understood that it needed to develop a robust internal enterprise search capacity – one that could accommodate a high volume of search requests, access the millions of specific items available for purchase at the partner stores, and present search results in a quick timeframe consistent with the expectations of its customers.

## Market America Contacts Google

9. In November of 2007, Market America contacted Google, a leader in Internet search technologies, in an effort to evaluate Google's capacity to assist Market America in developing an internal capability for its visitors to search the retail offerings available on the affiliate partner stores.

10. Google introduced Market America to LTech, a Google "partner" and member of the Google Enterprise Professional program, to potentially implement a new Internet search solution for Market America.

11. In early discussions, Market America informed Google and LTech that it needed a solution that could handle 30 million individual products, with the ability to go up to 50 million products in 6 months, and that could grow to 90 million over time. Google and LTech representatives unequivocally represented to Market America that their enterprise search products could provide a solution to meet the needs of Market America's quickly-expanding affiliate partner store offerings.

12. Google represented to Market America that its Google Search Appliances ("GSAs") – rack-mounted computer servers with loaded software – would have both the flexibility and advanced search capabilities to meet Market America's needs. Google further represented that, by partnering with their authorized representative LTech (to whom Google explicitly directed Market America), together Google and LTech could develop and implement a GSA-based solution that would meet all of Market America's enterprise search needs, with respect to anticipated volumes of products, with respect to acceptable response times, and with respect to the flexibility of the system.

**Market America Contracts with Google and LTech**

13. At a meeting at Market America headquarters on December 12, 2007, representatives of both Google and LTech evaluated Market America's enterprise search needs, and represented that they could produce a solution that could handle 30 million products within three months, and 60 million products in 6 months, all with sub-second response times. Understanding that scalability without decreased performance was critical for Market America's needs, Google and LTech represented that the GSA solution was scalable without a loss of performance simply by adding additional GSA units. Google and LTech also represented that the final system would have wide flexibility to meet Market America's needs, with features such as automatic spell check that would allow a searcher to avoid missing results through typos or misspellings and the ability to highlight certain products or groups of products in the returned search results.

14. Google, LTech and Market America commenced negotiations for a license agreement, a Google Search Appliance order form and a services agreement to implement a GSA-based enterprise search solution. The parties planned to sign the

contracts and make a public announcement regarding the relationship at Market America's Leadership School on February 6, 2008 – an event held at the American Airlines Arena in Miami and attended by over 20,000 individuals.

15. The partnership between Market America and Google, and the upcoming announcement at Leadership School, were key to Market America's planned development of its greatly-expanded web portal, as the new search capabilities would result in higher site traffic, higher revenues to Market America and its Independent Distributors, and greater exposure for Market America to expand its business. Additionally, by improving its search and categorization capabilities, Market America would be better positioned to convince its affiliate partners that they should become premier partners and sell their products directly through Market America's Universal Shopping Cart.

16. Google was aware of Market America's business plan and the importance of a new search solution to Market America's Independent Distributors, and agreed to send its representatives to the February 6 Leadership School to address the crowd directly.

17. At the eleventh hour, Tom Mills, Head of Sales, Mid Market Enterprise for Google, informed Market America that Google had restructured its business model, and accordingly a services agreement directly with Google was not necessary: the final services agreement would be only with LTech, even though Google would be involved in the implementation of the solution.

18. Soon thereafter, and in anticipation of the upcoming Leadership School event, a Services Agreement was signed between Market America and LTech on

February 1, 2008, and a License Agreement was signed between Google and Market America on February 4, 2008.  Through an "LTech Google Search Appliance Form," Market America acquired one GSA model 800815MDNSTD and related equipment and services, for a price of almost $1 million, with an asserted capacity to handle 15 million documents, and an option to upgrade search capacity through the acquisition of additional licenses and additional GSA 8008 machines, with each additional license or machine providing an additional 15 million document capacity to the search capabilities, up to a purported capacity of 90 million documents.

19. Attached to the Services Agreement was a Statement of Work ("SOW"), which, consistent with the prior representations of both LTech and Google, committed to developing a solution which would:

> leverage the speed and power of the Google Search Appliance (GSA) platform to deliver relevant search results in a variety of formats and zones to empower Market America users with up-to-date and on-target product information.  *The GSA will generally serve search responses in sub one-second time frame.*

The SOW promised that provision of all services, along with acceptance testing, would be completed by June 15, 2008.

**Market America Announces the Soon-to-Be Implemented Search Capabilities**

20. After these agreements were in place, in a joint press release on February 4, 2008, Nitin Mangtani, head of Google Enterprise Search Products, stated: "We are pleased to work with Market America to deliver search capabilities to the over 3 million customers that shop there.  Together we are implementing a search solution that will revolutionize the way Market America's customers shop online."

6

21. On February 8, 2008, Market America introduced the new Google relationship and the upcoming search capabilities to a crowd of over 20,000 Market America Independent Distributors, customers, and vendors at Market America Leadership School in Miami. Cyrus Mistry of Google, with an LTech representative onstage, addressed the crowd, announcing the relationship and the benefits that Google's search solution would provide to Market America, its Independent Distributors and partners. In connection with its advertising and promotional efforts, Market America distributed video and news of this event throughout the Internet and in print, press releases, videos, television news stories, and blog posts.

22. Market America's Independent Distributors were highly enthusiastic about the new Google partnership, and the new search capabilities the partnership would provide to the Market America portal, and the portals of overseas affiliate companies such as Market Australia. The Independent Distributors understood that the new capabilities would provide higher site traffic and corresponding higher revenues.

23. In reliance on Google's and LTech's promises that an acceptable solution would be in place by June 15, Market America hired product merchandisers and other personnel, purchased additional software and hardware to support its anticipated increased capabilities, and continued to make public announcements to court premier partners to join its Universal Shopping Cart.

**Google and LTech Fail to Provide the Capabilities Promised**

24. In April of 2008, the Google Search Appliance was installed at Market America. Load testing of the system by LTech showed response times in the 8 to 15 second range, with the system crashing at 15 queries per second.

7

25. On June 25, 2008, after the date that the solution was supposed to be up and running, and with no effective solution at hand, Google representative and Head of Sales, Tom Mills, told Market America: "I can do nothing but apologize profusely for the delays on your project – I am truly sorry for that and promise you we are doing our best to find an effective solution."

26. On June 26, 2008, Mr. Mills suggested that it would be necessary "to scale back a bit from the initial plan to ensure a reasonable level of performance."

27. On or about June 30, 2008, during a conference call between the parties, LTech's representatives suggested that they could implement a short term solution that would be "more digestible." Google's representatives admitted to Market America that its current solution was not scalable to 30, 50, or 90 million products, as Google and LTech had previously represented, and that the parties would need to look forward to a different long term solution, which would necessarily utilize a different hardware configuration. Google's representatives specifically acknowledged that they needed to do a better job than they were doing, and promised to devote resources to a long term solution.

28. Soon thereafter, during a conference call on July 8, 2008, Google representatives explicitly declared that its GSA could not perform any better, and confirmed that a different solution would need to be designed by Google's engineers.

29. Throughout the summer, Google's engineers, on a daily basis, represented to Market America that resources were being used to produce a final search solution that would deliver what Google and LTech had promised.

30. In fact, however, neither Google nor LTech were able to find an effective solution or ensure a reasonable level of performance. In July, Google proposed an interim solution that could handle 2 million documents, well below the volumes initially promised by Google and LTech. Google assured Market America that its short term solution would work while Google and LTech sought to implement an acceptable long term solution.

31. Market America's International Convention, held at the Greensboro Coliseum in Greensboro, North Carolina, was scheduled for August 8, 2008 – another event attended by over 20,000 individuals. Cyrus Mistry of Google again addressed the crowd to ensure Market America's Independent Distributors, customers, vendors, and partners that an acceptable solution would be implemented. In connection with its advertising and promotional efforts, Market America distributed video and news of this event throughout the Internet and in print, press releases, videos, television news stories, and blog posts.

32. The proposed short term solution went live during International Convention, and the system crashed. In the crash's aftermath, Market America was left with a short-term fix that was no better than the search capabilities it already had in place before Google promised a better solution.

33. Independent Distributors and multiple partner stores began to express concern about the delays in the project, several partner store relationships were negatively affected and various potential partner stores either discontinued or delayed discussions about signing on as partners. Indeed, after being informed that Market America's search capabilities could not support the number of products required by such

partners, some partners chose to remain as affiliate partners and some backed out of any relationship with Market America altogether – all to Market America's detriment.

34. On or about August 6, 2008, the same week as Market America's International Convention, and eight months after Google and LTech promised Market America a search capacity to handle 15 million documents, and an option to upgrade search capacity up to a capacity of 90 million documents, Google publicly advertised that it was to sell a solution that could handle up to 10 million documents.

35. Market America continued to work with Google and LTech to develop a solution that would provide sub-second response times for the volume of products Market America needed and with the features that Google and LTech originally promised was possible, expending additional sums on additional hardware and computer programming and on internal resources, but after several months it became clear that Google and LTech could not meet their initial and ongoing promises.

36. LTech began to advertise on its website, through a "case study" that after Market America identified Google for its search engine to search over 50 million products, LTech had developed a search solution for 3 million products.

37. By the end of 2008, Google and LTech remained unable to provide Market America with the long term solution that they had promised time and again. On January 2, 2009, Market America informed Google that it would not be proceeding with the implementation of a GSA-based enterprise search capacity.

38. On July 6, 2009, Market America tendered back possession of the GSAs to Google and LTech.

39. Market America has incurred and continues to incur significant costs in developing an alternative enterprise search capacity.

**COUNT I**
**Fraudulent Inducement**

40. Plaintiff repeats and realleges each allegation identified above as if fully set forth herein.

41. As set forth above, Defendants Google and LTech made false or materially misleading statements to Plaintiff about the capacity of a GSA-based search solution to handle high volumes of documents at acceptable speeds.

42. Defendants knew these representations to be false when they were made or the representations were made with a reckless indifference to their truth or falsity.

43. Defendants' misrepresentations were willful and material.

44. Google and LTech proffered these statements with the intent that Market America would rely on the representations when deciding to enter into contractual agreements with the Defendants.

45. Market America relied on Defendants' representations to its detriment when it agreed to enter into the Service Agreement and Google Search Appliance order form with LTech, the License Agreement with Google, and expended significant sums of money in connection with those representations.

46. Based on Defendants' misrepresentations, Plaintiff is entitled to rescission, compensatory damages and punitive damages from Defendants.

## COUNT II
## Fraud

47. Plaintiff repeats and realleges each allegation identified above as if fully set forth herein.

48. As set forth above, Defendants Google and LTech made false or materially misleading statements to Plaintiff about the capacity of a GSA-based search solution to handle high volumes of documents at acceptable speeds.

49. Defendants Google and LTech continuously represented that a long term solution could be implemented, and that the GSA-based search solution would meet Market America's needs.

50. Defendants knew these representations to be false when they were made or the representations were made with a reckless indifference to their truth or falsity.

51. Defendants' misrepresentations were willful and material.

52. Google and LTech proffered these statements with the intent that Market America would rely on the representations when deciding to enter into and continue its relationship with Defendants.

53. Market America relied on Defendants' representations to its detriment when it agreed to enter into and continue its relationship with Defendants, and expended significant sums of money in connection with those representations.

54. Based on Defendants' misrepresentations, Plaintiff is entitled to compensatory damages and punitive damages from Defendants.

## COUNT III
## Failure of Essential Purpose

55. Plaintiff repeats and realleges each allegation identified above as if fully set forth herein.

56. As set forth above, Defendant Google agreed to enter into a License Agreement with Plaintiff and Defendant LTech agreed to enter into a Services Agreement with Plaintiff to provide Google GSAs which would perform queries on between 30 million products and 90 million products in sub one-second time frames. Plaintiff would not have entered into these agreements unless these requirements were fulfilled.

57. The Defendants have not been able to provide goods or services which fulfill the requirements of performing queries on between 30 million products and 90 million products in sub one-second time frames.

58. As a direct and proximate result of the Defendants' failure to fulfill these requirements, and as a further direct and proximate result of the failure of the GSAs provided by Defendants to fulfill these requirements, the License Agreement and Services Agreement have failed in their essential purpose and are totally lacking in consideration.

59. Based on this failure of essential purpose and lack of consideration, Plaintiff is entitled to rescission and compensatory damages from Defendants.

## COUNT IV
## Unfair and Deceptive Trade Practices

60. Plaintiff repeats and realleges each allegation identified above as if fully set forth herein.

61. The Defendants, jointly and severally have engaged in unfair and deceptive trade practices in that each Defendant individually and in concert intentionally or recklessly represented their products and services as having characteristics and capabilities, which characteristics and capabilities the Defendants knew the products and services did not possess and were not capable of possessing. More specifically, each Defendant represented the Google GSA solution as having the capacity to query between 30 million products and 90 million products when they knew the Google appliances did not and could not possess such a capability. In addition, each Defendant represented the Google GSA solution as having the capacity to provide search responses for 30 million to 90 million products in a sub one-second time frame, when they knew the Google appliances did not and could not possess such a capability. At all times herein, Google and LTech continued to represent that they would be able to implement a long term solution that would function as they had promised.

62. The misrepresentations were in and affecting commerce in that they were designed to induce Plaintiff to enter into a Services Agreement and Google Search Appliance order form with Defendant LTech, a License Agreement with Defendant Google, and expend significant sums of money in connection with those misrepresentations.

63. Market America relied to its detriment on the Defendants' misrepresentations and, as a direct result, incurred substantial damages.

64. As a direct and proximate result of Defendants' unfair and deceptive trade practices, Market America is entitled to compensatory and statutory, treble, exemplary and/or punitive damages.

## **PRAYER**

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants as follows:

a. That judgment be entered against the Defendants, jointly and severally, for fraudulently inducing Market America to enter into contracts with the Defendants, by falsely representing the Defendants' products and services would meet certain measurable minimum levels of performance when Defendants knew the products and services would not be capable of doing so;

b. That judgment be entered against the Defendants, jointly and severally, for common law and statutory consumer fraud, for holding products and services out as having certain capabilities when the Defendants knew the products and services were not capable of performing as represented;

c. That judgment be entered against the Defendants, jointly and severally, for unfair and deceptive trade practices, for holding products and services out as having certain capabilities when the Defendants knew the products and services were not capable of performing as represented;

d. That this Court declare that all contracts entered by the parties be rescinded;

e. That compensatory damages be awarded to Market America against the Defendants, jointly and severally, for all actual and consequential damages incurred by Plaintiff as a direct and proximate result of Defendants' wrongful conduct;

f. That statutory, treble, exemplary and/or punitive damages be awarded against the Defendants because of their wrongful conduct; and

g. For such other relief as this Court determines is just and proper, including attorney's fees, interest and costs of this action.

**MORRIS JAMES LLP**

   */s/ Matthew F. Lintner*
Richard K. Herrmann (#405)
Matthew F. Lintner (#4371)
Jody C. Barillare (#5107)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com
mlintner@morrisjames.com
jbarillare@morrisjames.com

*Attorneys for Plaintiff MARKET AMERICA, INC.*

Dated: July 7, 2009