## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **MARKET AMERICA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **C.A. No. 09-00494 (GMS)** |
| | ) | |
| **GOOGLE, INC. and** | ) | |
| **LTECH CONSULTING, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF SERVICE

## AFFIDAVIT PURSUANT TO D. DEL. LR 4.1 (b)

STATE OF DELAWARE            :
                             : SS:
COUNTY OF NEW CASTLE         :

**BE IT REMEMBERED** that on this 24th day of July, 2009, personally came before me, the Subscriber, a Notary Public for the State and County aforesaid, Richard K. Herrmann, attorney for the Plaintiff, who being sworn according to law did depose and say as follows:

1.     That to the best of his knowledge, the Defendant LTech Consulting, LLC is a nonresident of the State of Delaware whose name and address is as follows:

> LTech Consulting, LLC
> 400 Somerset Corp Blvd.
> Suite 500
> Bridgewater, NJ 08807

Dockets.Justia.com

2.    That on July 7, 2009, the Complaint in the above-captioned action was filed; that on July 8, 2009 the Clerk issued a Summons to serve LTech Consulting, LLC pursuant to 10 Del. C. § 3104.

3.    That on July 13, 2009, the said Richard K. Herrmann, Esquire, caused a copy of the Notice, attached hereto as Exhibit A, to be mailed by Registered Mail to the following defendant: LTech Consulting, LLC.

4.    That on July 17, 2009, he, Richard K. Herrmann, Esquire, received from the postal authority the domestic return receipt. The said receipt is attached hereto as Exhibit B.

5.    That the said receipt has the same registered number, to-wit: RB 420 635 746 US, as the receipt received at the time of the mailing of said notice, attached hereto as Exhibit C.

Richard K. Herrmann (#405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
*Attorneys for Plaintiff*

SWORN TO AND SUBSCRIBED before me the day and year aforesaid:

Notary Public
MARGARET M. TOUCHTON
Notary Public - State of Delaware
My Comm. Expires May 11, 2010

# EXHIBIT   A

# Morris James LLP

Richard K. Herrmann
302.888.6816
rherrmann@morrisjames.com

July 13, 2009

**VIA REGISTERED MAIL NO. RB 420 635 746 US
RETURN RECEIPT REQUESTED**

LTech Consulting, LLC
400 Somerset Corporate Blvd, Suite 500
Bridgewater, NJ 08807

    Re:    ***Market America, Inc. v. Google, Inc. and LTech Consulting, LLC***
                 **D.Del., C.A. No. 09-494**

To whom it may concern:

      Please be advised that LTech Consulting, LLC has been named as a defendant in the above referenced matter. Pursuant to 10 Del. C. § 3104, enclosed please find a copy of the Summons and the Complaint as filed. Under 10 Del. C. § 3104, such service is as effectual to all intents and purposes as if it had been made upon LTech Consulting, LLC within the State of Delaware.

      Thank you for your attention to this matter.

      Yours,

      *RKH*

      Richard K. Herrmann (I.D. #405)
      *rherrmann@morrisjames.com*

RKH/sch

AO 440 (Rev. 02/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the District Of Delaware

MARKET AMERICA, INC.,

Plaintiff,

v.

GOOGLE, INC. and LTECH CONSULTING, LLC,

Defendants.

Civil Action No. 09-494

SUMMONS IN A CIVIL ACTION

TO: *(Defendant's name and address)*
LTECH CONSULTING, LLC
400 Somerset Corporate Boulevard, Suite 500
Bridgewater, NJ 08807

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

Richard K. Herrmann
Matthew F. Lintner
Jody C. Barillare
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 7/8/09

*Signature of Clerk or Deputy Clerk*

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFF**

Market America, Inc.

**DEFENDANTS**

Google, Inc. and LTech Consulting, LLC

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Guilford County, North Carolina
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY).

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
Richard K. Herrmann; Matthew F. Lintner; Jody C. Barillare
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
302-888-6800

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign County | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med. | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 365 Personal Injury – Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R. R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers Liability | | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☒ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS – Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc Security Act | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY )

Action for fraudulent inducement; jurisdiction under 28 U.S.C. § 1332.

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY**  (See instructions):

JUDGE                    DOCKET NUMBER

DATE

July 7, 2009

SIGNATURE OF ATTORNEY OF RECORD

*/s/ Matthew F. Lintner*

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARKET AMERICA, INC., )
)
    Plaintiff, )
)
    v. )   C.A. No. 09-494
)
GOOGLE, INC. and )   **JURY TRIAL DEMANDED**
LTECH CONSULTING, LLC, )
)
    Defendants. )

## PLAINTIFF'S RULE 7.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Plaintiff Market America,

Inc. hereby advises the Court that its parent company is Market America Worldwide, Inc. and

that no publicly held entity holds 10% or more of its stock.

Dated:  July 7, 2009

                           MORRIS JAMES LLP

                           */s/ Matthew F. Lintner*
                           Richard K. Herrmann (#405)
                           Matthew F. Lintner (#4371)
                           Jody C. Barillare (#5107)
                           500 Delaware Avenue, Suite 1500
                           Wilmington, DE 19801
                           (302) 888-6800
                           rherrmann@morrisjames.com
                           mlintner@morrisjames.com
                           jbarillare@morrisjames.com

                           Attorneys for Plaintiff MARKET AMERICA, INC.

MARKET AMERICA, INC.,     )
           )
    Plaintiff,      )
           )
    v.         )   C.A. No. __O9494__
           )
GOOGLE, INC. and      )   JURY TRIAL DEMANDED
LTECH CONSULTING, LLC,    )
           )
    Defendants.     )

## COMPLAINT

Market America, Inc. hereby complains against Google, Inc. and LTech

Consulting, LLC as follows:

### PARTIES AND JURISDICTION

1.  Plaintiff, Market America, Inc., (hereinafter "Market America") is a North

Carolina corporation with its principal place of business located at 1302 Pleasant Ridge

Road, Greensboro, North Carolina.

2.  Defendant Google, Inc., (hereinafter "Google") is a Delaware corporation

with its principal place of business located at 1600 Amphitheatre Parkway, Mountain

View, California.

3.  Defendant LTech Consulting, LLC, (hereinafter "LTech") is a New Jersey

limited liability company with its principal place of business located at 400 Somerset

Corporate Blvd., Suite 500, Bridgewater, New Jersey.

4.  This Court has jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. § 1332(a)(2) under diversity of citizenship, in that the matter in controversy

exceeds $75,000 exclusive of interest and costs, and each of the parties are incorporated in different states and have principal places of business in different states.

5.   This Court has personal jurisdiction over the Defendants in that: (1) Defendant Google is a Delaware corporation; and (2) Defendant LTech has represented its desire that any dispute arising out of the subject matter of this complaint be resolved in the State of Delaware, and has thereby waived and is estopped from contesting personal jurisdiction.

## STATEMENT OF FACTS

### Market America Seeks to Expand the Offerings Available to its Customers

6.   Market America is an Internet marketing and product brokerage company that has pioneered an online shopping portal similar to Amazon.com, but with each customer having an online contact or guide on the Internet, a concept known as One-to-One marketing. Market America seeks to combine the power of the Internet with the power of people to create a preeminent online shopping destination. The site, along with affiliated overseas sites, such as Market Australia and Market Hong Kong, serves millions of customers, who are supported by tens of thousands of Customer Managers, also called "Independent Distributors," worldwide.

7.   In November of 2007, Market America and its affiliated overseas sites were in the process of dramatically expanding the scope of the offerings available on their sites, by allowing visitors to the sites to search for and identify not only Market America-branded products, but also the millions of products sold by Market America partner stores, referred to as "premier partners" or "affiliate partners." Visitors could then link to those affiliate partner sites and complete their purchase. Through the

2

creation of Market America's "Universal Shopping Cart," the purchase of an item offered by a premier partner store could, for many stores, be completed on the Market America site itself, with payment then made by Market America to that partner.

8.    To enable its visitors to access the millions of products available through these partner stores, Market America understood that it needed to develop a robust internal enterprise search capacity – one that could accommodate a high volume of search requests, access the millions of specific items available for purchase at the partner stores, and present search results in a quick timeframe consistent with the expectations of its customers.

### Market America Contacts Google

9.    In November of 2007, Market America contacted Google, a leader in Internet search technologies, in an effort to evaluate Google's capacity to assist Market America in developing an internal capability for its visitors to search the retail offerings available on the affiliate partner stores.

10.    Google introduced Market America to LTech, a Google "partner" and member of the Google Enterprise Professional program, to potentially implement a new Internet search solution for Market America.

11.    In early discussions, Market America informed Google and LTech that it needed a solution that could handle 30 million individual products, with the ability to go up to 50 million products in 6 months, and that could grow to 90 million over time. Google and LTech representatives unequivocally represented to Market America that their enterprise search products could provide a solution to meet the needs of Market America's quickly-expanding affiliate partner store offerings.

3

12.     Google represented to Market America that its Google Search Appliances ("GSAs") – rack-mounted computer servers with loaded software – would have both the flexibility and advanced search capabilities to meet Market America's needs. Google further represented that, by partnering with their authorized representative LTech (to whom Google explicitly directed Market America), together Google and LTech could develop and implement a GSA-based solution that would meet all of Market America's enterprise search needs, with respect to anticipated volumes of products, with respect to acceptable response times, and with respect to the flexibility of the system.

### Market America Contracts with Google and LTech

13.     At a meeting at Market America headquarters on December 12, 2007, representatives of both Google and LTech evaluated Market America's enterprise search needs, and represented that they could produce a solution that could handle 30 million products within three months, and 60 million products in 6 months, all with sub-second response times. Understanding that scalability without decreased performance was critical for Market America's needs, Google and LTech represented that the GSA solution was scalable without a loss of performance simply by adding additional GSA units. Google and LTech also represented that the final system would have wide flexibility to meet Market America's needs, with features such as automatic spell check that would allow a searcher to avoid missing results through typos or misspellings and the ability to highlight certain products or groups of products in the returned search results.

14.     Google, LTech and Market America commenced negotiations for a license agreement, a Google Search Appliance order form and a services agreement to implement a GSA-based enterprise search solution. The parties planned to sign the

4

contracts and make a public announcement regarding the relationship at Market America's Leadership School on February 6, 2008 – an event held at the American Airlines Arena in Miami and attended by over 20,000 individuals.

15. The partnership between Market America and Google, and the upcoming announcement at Leadership School, were key to Market America's planned development of its greatly-expanded web portal, as the new search capabilities would result in higher site traffic, higher revenues to Market America and its Independent Distributors, and greater exposure for Market America to expand its business. Additionally, by improving its search and categorization capabilities, Market America would be better positioned to convince its affiliate partners that they should become premier partners and sell their products directly through Market America's Universal Shopping Cart.

16. Google was aware of Market America's business plan and the importance of a new search solution to Market America's Independent Distributors, and agreed to send its representatives to the February 6 Leadership School to address the crowd directly.

17. At the eleventh hour, Tom Mills, Head of Sales, Mid Market Enterprise for Google, informed Market America that Google had restructured its business model, and accordingly a services agreement directly with Google was not necessary: the final services agreement would be only with LTech, even though Google would be involved in the implementation of the solution.

18. Soon thereafter, and in anticipation of the upcoming Leadership School event, a Services Agreement was signed between Market America and LTech on

February 1, 2008, and a License Agreement was signed between Google and Market America on February 4, 2008. Through an "LTech Google Search Appliance Form," Market America acquired one GSA model 800815MDNSTD and related equipment and services, for a price of almost $1 million, with an asserted capacity to handle 15 million documents, and an option to upgrade search capacity through the acquisition of additional licenses and additional GSA 8008 machines, with each additional license or machine providing an additional 15 million document capacity to the search capabilities, up to a purported capacity of 90 million documents.

19.    Attached to the Services Agreement was a Statement of Work ("SOW"), which, consistent with the prior representations of both LTech and Google, committed to developing a solution which would:

> leverage the speed and power of the Google Search Appliance (GSA) platform to deliver relevant search results in a variety of formats and zones to empower Market America users with up-to-date and on-target product information. *The GSA will generally serve search responses in sub one-second time frame.*

The SOW promised that provision of all services, along with acceptance testing, would be completed by June 15, 2008.

**Market America Announces the Soon-to-Be Implemented Search Capabilities**

20.    After these agreements were in place, in a joint press release on February 4, 2008, Nitin Mangtani, head of Google Enterprise Search Products, stated: "We are pleased to work with Market America to deliver search capabilities to the over 3 million customers that shop there. Together we are implementing a search solution that will revolutionize the way Market America's customers shop online."

21.     On February 8, 2008, Market America introduced the new Google relationship and the upcoming search capabilities to a crowd of over 20,000 Market America Independent Distributors, customers, and vendors at Market America Leadership School in Miami. Cyrus Mistry of Google, with an LTech representative onstage, addressed the crowd, announcing the relationship and the benefits that Google's search solution would provide to Market America, its Independent Distributors and partners. In connection with its advertising and promotional efforts, Market America distributed video and news of this event throughout the Internet and in print, press releases, videos, television news stories, and blog posts.

22.     Market America's Independent Distributors were highly enthusiastic about the new Google partnership, and the new search capabilities the partnership would provide to the Market America portal, and the portals of overseas affiliate companies such as Market Australia. The Independent Distributors understood that the new capabilities would provide higher site traffic and corresponding higher revenues.

23.     In reliance on Google's and LTech's promises that an acceptable solution would be in place by June 15, Market America hired product merchandisers and other personnel, purchased additional software and hardware to support its anticipated increased capabilities, and continued to make public announcements to court premier partners to join its Universal Shopping Cart.

### Google and LTech Fail to Provide the Capabilities Promised

24.     In April of 2008, the Google Search Appliance was installed at Market America. Load testing of the system by LTech showed response times in the 8 to 15 second range, with the system crashing at 15 queries per second.

7

25. On June 25, 2008, after the date that the solution was supposed to be up and running, and with no effective solution at hand, Google representative and Head of Sales, Tom Mills, told Market America: "I can do nothing but apologize profusely for the delays on your project – I am truly sorry for that and promise you we are doing our best to find an effective solution."

26. On June 26, 2008, Mr. Mills suggested that it would be necessary "to scale back a bit from the initial plan to ensure a reasonable level of performance."

27. On or about June 30, 2008, during a conference call between the parties, LTech's representatives suggested that they could implement a short term solution that would be "more digestible." Google's representatives admitted to Market America that its current solution was not scalable to 30, 50, or 90 million products, as Google and LTech had previously represented, and that the parties would need to look forward to a different long term solution, which would necessarily utilize a different hardware configuration. Google's representatives specifically acknowledged that they needed to do a better job than they were doing, and promised to devote resources to a long term solution.

28. Soon thereafter, during a conference call on July 8, 2008, Google representatives explicitly declared that its GSA could not perform any better, and confirmed that a different solution would need to be designed by Google's engineers.

29. Throughout the summer, Google's engineers, on a daily basis, represented to Market America that resources were being used to produce a final search solution that would deliver what Google and LTech had promised.

30. In fact, however, neither Google nor LTech were able to find an effective solution or ensure a reasonable level of performance. In July, Google proposed an interim solution that could handle 2 million documents, well below the volumes initially promised by Google and LTech. Google assured Market America that its short term solution would work while Google and LTech sought to implement an acceptable long term solution.

31. Market America's International Convention, held at the Greensboro Coliseum in Greensboro, North Carolina, was scheduled for August 8, 2008 – another event attended by over 20,000 individuals. Cyrus Mistry of Google again addressed the crowd to ensure Market America's Independent Distributors, customers, vendors, and partners that an acceptable solution would be implemented. In connection with its advertising and promotional efforts, Market America distributed video and news of this event throughout the Internet and in print, press releases, videos, television news stories, and blog posts.

32. The proposed short term solution went live during International Convention, and the system crashed. In the crash's aftermath, Market America was left with a short-term fix that was no better than the search capabilities it already had in place before Google promised a better solution.

33. Independent Distributors and multiple partner stores began to express concern about the delays in the project, several partner store relationships were negatively affected and various potential partner stores either discontinued or delayed discussions about signing on as partners. Indeed, after being informed that Market America's search capabilities could not support the number of products required by such

9

partners, some partners chose to remain as affiliate partners and some backed out of any relationship with Market America altogether – all to Market America's detriment.

34.     On or about August 6, 2008, the same week as Market America's International Convention, and eight months after Google and LTech promised Market America a search capacity to handle 15 million documents, and an option to upgrade search capacity up to a capacity of 90 million documents, Google publicly advertised that it was to sell a solution that could handle up to 10 million documents.

35.     Market America continued to work with Google and LTech to develop a solution that would provide sub-second response times for the volume of products Market America needed and with the features that Google and LTech originally promised was possible, expending additional sums on additional hardware and computer programming and on internal resources, but after several months it became clear that Google and LTech could not meet their initial and ongoing promises.

36.     LTech began to advertise on its website, through a "case study" that after Market America identified Google for its search engine to search over 50 million products, LTech had developed a search solution for 3 million products.

37.     By the end of 2008, Google and LTech remained unable to provide Market America with the long term solution that they had promised time and again. On January 2, 2009, Market America informed Google that it would not be proceeding with the implementation of a GSA-based enterprise search capacity.

38.     On July 6, 2009, Market America tendered back possession of the GSAs to Google and LTech.

39.     Market America has incurred and continues to incur significant costs in developing an alternative enterprise search capacity.

## COUNT I
### Fraudulent Inducement

40.     Plaintiff repeats and realleges each allegation identified above as if fully set forth herein.

41.     As set forth above, Defendants Google and LTech made false or materially misleading statements to Plaintiff about the capacity of a GSA-based search solution to handle high volumes of documents at acceptable speeds.

42.     Defendants knew these representations to be false when they were made or the representations were made with a reckless indifference to their truth or falsity.

43.     Defendants' misrepresentations were willful and material.

44.     Google and LTech proffered these statements with the intent that Market America would rely on the representations when deciding to enter into contractual agreements with the Defendants.

45.     Market America relied on Defendants' representations to its detriment when it agreed to enter into the Service Agreement and Google Search Appliance order form with LTech, the License Agreement with Google, and expended significant sums of money in connection with those representations.

46.     Based on Defendants' misrepresentations, Plaintiff is entitled to rescission, compensatory damages and punitive damages from Defendants.

## COUNT II
### Fraud

47. Plaintiff repeats and realleges each allegation identified above as if fully set forth herein.

48. As set forth above, Defendants Google and LTech made false or materially misleading statements to Plaintiff about the capacity of a GSA-based search solution to handle high volumes of documents at acceptable speeds.

49. Defendants Google and LTech continuously represented that a long term solution could be implemented, and that the GSA-based search solution would meet Market America's needs.

50. Defendants knew these representations to be false when they were made or the representations were made with a reckless indifference to their truth or falsity.

51. Defendants' misrepresentations were willful and material.

52. Google and LTech proffered these statements with the intent that Market America would rely on the representations when deciding to enter into and continue its relationship with Defendants.

53. Market America relied on Defendants' representations to its detriment when it agreed to enter into and continue its relationship with Defendants, and expended significant sums of money in connection with those representations.

54. Based on Defendants' misrepresentations, Plaintiff is entitled to compensatory damages and punitive damages from Defendants.

## COUNT III
## Failure of Essential Purpose

55.     Plaintiff repeats and realleges each allegation identified above as if fully set forth herein.

56.     As set forth above, Defendant Google agreed to enter into a License Agreement with Plaintiff and Defendant LTech agreed to enter into a Services Agreement with Plaintiff to provide Google GSAs which would perform queries on between 30 million products and 90 million products in sub one-second time frames.  Plaintiff would not have entered into these agreements unless these requirements were fulfilled.

57.     The Defendants have not been able to provide goods or services which fulfill the requirements of performing queries on between 30 million products and 90 million products in sub one-second time frames.

58.     As a direct and proximate result of the Defendants' failure to fulfill these requirements, and as a further direct and proximate result of the failure of the GSAs provided by Defendants to fulfill these requirements, the License Agreement and Services Agreement have failed in their essential purpose and are totally lacking in consideration.

59.     Based on this failure of essential purpose and lack of consideration, Plaintiff is entitled to rescission and compensatory damages from Defendants.

## COUNT IV
## Unfair and Deceptive Trade Practices

60.     Plaintiff repeats and realleges each allegation identified above as if fully set forth herein.

61.     The Defendants, jointly and severally have engaged in unfair and deceptive trade practices in that each Defendant individually and in concert intentionally or recklessly represented their products and services as having characteristics and capabilities, which characteristics and capabilities the Defendants knew the products and services did not possess and were not capable of possessing. More specifically, each Defendant represented the Google GSA solution as having the capacity to query between 30 million products and 90 million products when they knew the Google appliances did not and could not possess such a capability. In addition, each Defendant represented the Google GSA solution as having the capacity to provide search responses for 30 million to 90 million products in a sub one-second time frame, when they knew the Google appliances did not and could not possess such a capability. At all times herein, Google and LTech continued to represent that they would be able to implement a long term solution that would function as they had promised.

62.     The misrepresentations were in and affecting commerce in that they were designed to induce Plaintiff to enter into a Services Agreement and Google Search Appliance order form with Defendant LTech, a License Agreement with Defendant Google, and expend significant sums of money in connection with those misrepresentations.

63.     Market America relied to its detriment on the Defendants' misrepresentations and, as a direct result, incurred substantial damages.

64.     As a direct and proximate result of Defendants' unfair and deceptive trade practices, Market America is entitled to compensatory and statutory, treble, exemplary and/or punitive damages.

14

## PRAYER

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants as follows:

a. That judgment be entered against the Defendants, jointly and severally, for fraudulently inducing Market America to enter into contracts with the Defendants, by falsely representing the Defendants' products and services would meet certain measurable minimum levels of performance when Defendants knew the products and services would not be capable of doing so;

b. That judgment be entered against the Defendants, jointly and severally, for common law and statutory consumer fraud, for holding products and services out as having certain capabilities when the Defendants knew the products and services were not capable of performing as represented;

c. That judgment be entered against the Defendants, jointly and severally, for unfair and deceptive trade practices, for holding products and services out as having certain capabilities when the Defendants knew the products and services were not capable of performing as represented;

d. That this Court declare that all contracts entered by the parties be rescinded;

e. That compensatory damages be awarded to Market America against the Defendants, jointly and severally, for all actual and consequential damages incurred by Plaintiff as a direct and proximate result of Defendants' wrongful conduct;

f. That statutory, treble, exemplary and/or punitive damages be awarded against the Defendants because of their wrongful conduct; and

15

g.   For such other relief as this Court determines is just and proper, including

attorney's fees, interest and costs of this action.

MORRIS JAMES LLP

_/s/ Matthew F. Lintner_
Richard K. Herrmann (#405)
Matthew F. Lintner (#4371)
Jody C. Barillare (#5107)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com
mlintner@morrisjames.com
jbarillare@morrisjames.com

*Attorneys for Plaintiff MARKET AMERICA, INC.*

Dated:  July 7, 2009

## Complaints

<u>1:99-mc-09999 Plaintiff(s) v. Defendant(s)</u>

**U.S. District Court**

**District of Delaware**

## Notice of Electronic Filing

The following transaction was entered by Lintner, Matthew on 7/7/2009 at 3:52 PM EDT and filed on 7/7/2009

**Case Name:**    Plaintiff(s) v. Defendant(s)

**Case Number:**    <u>1:99-mc-9999</u>

**Filer:**

**Document Number:** <u>188</u>

**Docket Text:**
COMPLAINT - Market America, Inc. v. Google, Inc. and LTech Consulting, LLC. Filing fee $ 350, receipt number 03110000000000605892. (Attachments: # (1) CIS form, # (2) Summons to Google, Inc., # (3) Summons to LTech Consulting, LLC, # (4) Corporate Disclosure Statement)(Lintner, Matthew)

**1:99-mc-9999 Notice has been electronically mailed to:**

**1:99-mc-9999 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/7/2009] [FileNumber=797366-0]
[011f1cda8695fed6de75402a2d340e0e6cbf7a69c3df906370ef1ff266a9c4e5954ab
f598652733f37eef4dc99afc0e6c195c84041693686b8c815ae05a35496]]
**Document description:** CIS form
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/7/2009] [FileNumber=797366-1]
[22a89bdd29750f4170057d22310d659738b8defc03c1b58e734142fe5f47a7173eb10
eb349ce33fc9d81fdbcb7632301fe3e5307e90929ffff99b0f4ca85e574]]
**Document description:** Summons to Google, Inc.
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/7/2009] [FileNumber=797366-2]
[1305d3afe9879b3b6eb25f014fb2ab29e2b95f29a10aa9413c19f153acce5db5e24c9

ef23103f7314ff9d492ff0fa17aeff3187a0bdc9ac02544f0aabfe2bbac]]
**Document description:** Summons to LTech Consulting, LLC
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/7/2009] [FileNumber=797366-3]
[578fbd00bd373000b14efdd1b4540f8ab84da3e427bfa1e8f399e757c8de21e37f86a
d5ad5ce58a948c1a7b6d80127453046ace24efc61433583ed5a0a777998]]
**Document description:** Corporate Disclosure Statement
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/7/2009] [FileNumber=797366-4]
[0be9e50af7b3c96c66333514c3db052480d9bbe2832ab42f7e8b5c51ab92a0f259c67
e901ccfe1a499ffea49ec8c21cf25cd8ebac6e5eaa0dfc242240044c574]]

# EXHIBIT B

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _(signature)_    ☐ Agent    ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
7·18·08

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

1. Article Addressed to:

LTech Consulting, LLC
400 Somerset Corp Blvd
Suite 500
Bridgewater, NJ 08807

3. Service Type
☐ Certified Mail    ☐ Express Mail
☒ Registered    ☒ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*    ☐ Yes

2. Article Number
(Transfer from service label)    RB 420 635 746 US

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# EXHIBIT C



| Registered No. | | Date Stamp |
|---|---|---|
| RB 420 635 746 US | | |

**Reg. Fee**

**Handling Charge** RB4206357460S

**Postage** $10.60

**Received by** M. Walter

**Customer Must Declare Full Value $** $1.56

Return Receipt

Restricted Delivery

Domestic Insurance up to $50,000 is included based upon the declared value. International Indemnity is limited. (See Reverse).

WILMINGTON DE 19801
0501
JUL 1 3 2009
04
07/13/09
SQUARE STATION USPS

OFFICIAL USE

**FROM** $0.00
R. K. Herrmann
Morris James LLP
PO Box 2306
Wilmington, DE 19899-2306

**TO**
LTech Consulting, LLC
400 Somerset Corp Blvd
Suite 200
BRIDGEWATER NJ 08807
Bridgewater, NJ 08807

PS Form **3806,** **Receipt for Registered Mail** *Copy 1 - Customer*
May 2007 (7530-02-000-9051) *(See Information on Reverse)*
For domestic delivery information, visit our website at *www.usps.com* ®