**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MARKET AMERICA, INC.                    :
                                        :
            Plaintiff,                  :        Civil Action No.: 1:09-cv-00494-GMS
                                        :
    v.                                  :
                                        :
GOOGLE INC. and                         :
LTECH CONSULTING, LLC,                  :        **JURY TRIAL DEMANDED**
                                        :
            Defendants.                 :

**OPENING BRIEF OF DEFENDANT LTECH CONSULTING, LLC**
**IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE**
**TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Michael F. Bonkowski (No. 2219)
COLE, SCHOTZ, MEISEL,
  FORMAN & LEONARD, P.A.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 651-2002 (Phone)
(302) 652-3117 (Fax)
mbonkowski@coleschotz.com

and

Peter J. Frazza (Admitted Pro Hac Vice)
Donald P. Jacobs (Admitted Pro Hac Vice)
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, NJ 07078
(973)379-4800

Attorneys for Defendant,
LTech Consulting, LLC

Dated: August 31, 2009

Dockets.Justia.com

# TABLE OF CONTENTS

Page

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS............................ 1

SUMMARY OF ARGUMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

    I.      The Parties and Jurisdiction ............................................................... 3

    II.     Market America's Initial Contacts With Google and LTech ................. 3

    III.    The Contracts ..................................................................................... 5

    IV.    Events After the Execution of the Contracts ....................................... 7

ARGUMENT ........................................................................................................................ 10

    I.      Standards of Review ......................................................................... 10

          A.     Rule 12(b)(6).......................................................................... 10

          B.     Applicable Law ....................................................................... 11

    II.     COUNTS I AND II SHOULD BE DISMISSED. .................................. 12

          A.     The Complaint Fails to Plead Specific Facts Regarding Intent
                to Defraud. ............................................................................. 12

          B.     In Any Event, the Alleged Fraud Is Not Pled With the Requisite
                Particularity. .......................................................................... 14

    III.    COUNT III SHOULD BE DISMISSED. ............................................. 14

    IV.    COUNT IV SHOULD BE DISMISSED. ............................................. 15

          A.     The Allegations Fail to Satisfy Rule 8(a)(2)............................. 16

          B.     Market America Cannot Recover Under Either of the Potentially
                Applicable Delaware Statutes. ................................................. 17

CONCLUSION...................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032 (Del. Ch. 2006) ...................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................10, 11, 16, 17

*Brown v. Buschman Co.*, 2002 WL 389139 (D. Del. 2002)....................................13, 14

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) .......................................3

*Don's Hydraulics, Inc. v. Colony Ins. Co.*, 417 F. Supp. 2d 601 (D. Del. 2006) .........................11

*Edelist v. MBNA America Bank*, 790 A.2d 1249 (Del. Super. Ct. 2001).....................................11

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)................................................................11

*Fatovic v. Chrysler Corp.*, 2003 WL 21481012 (Del. Super. Ct. 2003) .........................................15

*Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200 (Del. Ch. 1988) .........................................17

*Grand Ventures, Inc. v. Whaley*, 632 A.2d 63 (Del. 1993) .....................................17, 18

*Hutt v. Taylor*, 2009 WL 838832 (D. Del. 2009) ...............................................10, 11, 17

*Irgau v. Christiana Care Health Servs.*, 2008 WL 1724250 (Del. Super. Ct. 2008).....................18

*Klein v. General Nutrition Co.*, 186 F.3d 338 (3d Cir. 1999).........................................14

*Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007).......................................17

*Lloyd v. MBNA America Bank, N.A.*, 27 Fed. Appx. 82 (3d Cir. 2002) .....................................11

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir.), *cert. denied*, 543 U.S. 918 (2004).........................14

*Lynch v. Coinmaster USA, Inc.*, 614 F. Supp. 2d 494 (D. Del. 2009) .........................................18

*Neuberger v. Gordon*, 567 F. Supp. 2d 622 (D. Del. 2007)..............................................3

*Northern Mich. Hosps., Inc. Health Net Fed. Servs., LLC*, 2008 WL 2233964, at *3 (D. Del. 2008) ........................................................................10, 16

*Paul v. Deloitte & Touche LLP*, 2007 WL 2402987 (D. Del. 2007)............................................11

*Winner Acceptance Corp. v. Return on Capital Corp.* 2008 WL 5352063 (Del. Ch. 2008) ...............................................12, 13, 14

<u>Worldspan, L.P. v. Ultimate Living Group</u>, LLC, 390 F. Supp. 2d 412 (D. Del. 2005) .........17, 18

**RULES**

Federal Rule of Civil Procedure 8(a)(2) ...............................................................10, 16

Federal Rule of Civil Procedure 9(b).........................................................................14

Federal Rule of Civil Procedure 12(b)(6) ...............................................................1, 10

**STATUTES**

6 Del. C. § 2-719(2) .......................................................................................................15

6 Del. C. § 2511 et seq.....................................................................................................17

6 Del. C. § 2512 ...............................................................................................................17

6 Del. C. § 2531 et seq.....................................................................................................17

6 Del. C. § 2708(a)...........................................................................................................11

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

This is an action for fraudulent inducement, fraud, "failure of essential purpose" and

"unfair and deceptive practices." Plaintiff Market America, Inc. (Market America) filed its

complaint on July 7, 2009 against defendants Google, Inc. (Google) and LTech Consulting, LLC

(LTech). This brief is submitted on behalf of LTech in support of its motion, pursuant to Federal

Rule of Civil Procedure 12(b)(6), to dismiss the complaint for failure to state claim upon which

relief can be granted.[1]

## SUMMARY OF ARGUMENT

Count I of the complaint, which alleges that LTech fraudulently induced Market America

to enter into a Services Agreement, and Count II, which alleges fraud, are both based upon

allegations that LTech made false statements about the future capacity of Google Search

Appliance (GSA) technology -- specifically, about the GSA's ability to handle high volumes of

documents at acceptable speeds. Market America claims that the representations were false

when made or that they were made with reckless indifference to the truth. These fraud counts

should be dismissed for two reasons.

First, under applicable Delaware law, an unfulfilled promise of future performance will

not convert a potential contract claim into a claim sounding in fraud unless, at the time the

promise was made, the speaker had no intention of performing. Delaware looks with particular

disfavor at allegations of fraud when the underlying statements take the form of unfulfilled

promises of future performance. Therefore, to state a claim for promissory fraud, a plaintiff must

---

[1]    This Rule 12(b)(6) motion is directed only at the sufficiency of the complaint. LTech's
filing of this motion is without prejudice to its right to move at a later date, if necessary, to
dismiss any remaining or new claims on a different ground: that, pursuant to an Asset Purchase
Agreement, the present LTech is not responsible for the liabilities of the prior LTech, which is
the entity that entered into the business relationship with Market America.

plead specific facts that lead to a reasonable inference that the promissor had no intention of performing at the time the promise was made. Market America has pleaded no such specific facts; its allegations consist only of conclusory statements.

Second, the complaint never identifies who at LTech made the allegedly fraudulent statements. Market America has thus failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

As for Count III of the complaint, Delaware does not recognize a cause of action for "failure of essential purpose." Although the Uniform Commercial Code addresses that concept, the relevant section relates to remedies; it does not provide for a cause of action.

Finally, Count IV, which alleges that Market America is entitled to recover treble damages, punitive damages and other damages under an unidentified statute relating to "unfair and deceptive practices," should be dismissed because the complaint fails to provide the "fair notice" required by Federal Rule of Civil Procedure 8(a)(2). Even if the complaint is liberally construed as an attempt to assert a claim under the Delaware Consumer Fraud Act, this count still fails to state a claim because Market America does not allege that the alleged fraud occurred in Delaware. And even if the complaint is liberally construed as an attempt to assert a claim under the Delaware Deceptive Trade Practices Act, Market America lacks standing to bring the claim.

## STATEMENT OF FACTS

This Statement of Facts tracks the allegations of the complaint. LTech accepts those "facts" as true only for purposes of this motion.

In addition to reciting the facts alleged in the complaint, this Statement of Facts refers to provisions of the parties' contracts. The contracts are integral to the complaint, and although they are not attached to the complaint, the Court is free to consider them without causing this

motion to be converted into a motion for summary judgment.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Neuberger v. Gordon, 567 F. Supp. 2d 622, 630 (D. Del. 2007).  Copies of the contracts are attached to the Declaration of Donald P. Jacobs (Jacobs Decl.) submitted herewith.

## I.     THE PARTIES AND JURISDICTION

Market America is a North Carolina corporation with its principal place of business in North Carolina.  Compl., ¶1.  Google is a Delaware corporation with its principal place of business in California.  Id., ¶2.  LTech is a New Jersey limited liability company with its principal place of business in New Jersey.  Id., ¶3.

## II.    MARKET AMERICA'S INITIAL CONTACTS WITH GOOGLE AND LTECH

The complaint alleges that Market America is an Internet marketing and product brokerage company that has pioneered an online shopping portal similar to Amazon.com, but with each customer having an online contact or guide on the Internet -- a concept known as One-to-One marketing.  Compl., ¶6.  Market America's site, along with affiliated overseas sites, serves millions of customers, who are supported by tens of thousands of Customer Managers, also called "Independent Distributors," worldwide.  Id.

In November 2007, Market America and its affiliated overseas sites were in the process of dramatically expanding the scope of the offerings available on their sites by allowing visitors to search for and identify not only Market America-branded products, but also the millions of products sold by Market America partner stores, referred to as "premier partners" or "affiliate partners."  Compl., ¶7.  Visitors could then link to those affiliate partner sites and complete their purchase.  Id.  Through the creation of Market America's "Universal Shopping Cart," the purchase of an item offered by a premier partner store could, for many stores, be completed on the Market America site itself, with payment then made by Market America to that partner.  Id.

To enable its visitors to access the millions of products available through these partner stores, Market America needed to develop an internal enterprise search capacity that could accommodate a high volume of search requests, access millions of specific items and present search results quickly. Compl., ¶8. In November 2007, Market America contacted Google in an effort to evaluate Google's ability to help Market America in developing an internal search capability. Id., ¶9. Google introduced Market America to LTech, a Google "partner" and member of the Google Enterprise Professional program, to potentially implement a new Internet search solution for Market America. Id., ¶10.

Market America claims that in early discussions, it informed Google and LTech that it needed a solution that could handle 30 million individual products, with the ability to go up to 50 million products in 6 months and 90 million products over time. Compl., ¶11. The complaint alleges that Google and LTech representatives unequivocally represented to Market America that their enterprise search products could provide a solution to meet the needs of Market America's quickly-expanding affiliate partner store offerings. Id.

The complaint further alleges that Google represented to Market America that its GSAs -- rack-mounted computer servers with loaded software -- would have the flexibility and advanced search capabilities to meet Market America's needs. Compl., ¶12. The complaint alleges that Google further represented that by partnering with LTech, Google and LTech together "could develop and implement a GSA-based solution that would meet all of Market America's enterprise search needs," with respect to anticipated volumes of products, acceptable response times and flexibility of the system. Id.

The complaint alleges that on December 12, 2007, at a meeting at Market America's headquarters, Google and LTech evaluated Market America's needs and represented that "they

could produce a solution" that could handle 30 million products within 3 months and 60 million products within 6 months, all with sub-second response times. Compl., ¶13. They allegedly further represented that the GSA solution was scalable without a loss of performance simply by adding additional GSA units, and that the final system would have wide flexibility to meet Market America's needs. Id.

The parties commenced negotiations for a license agreement, a GSA order form and a services agreement. Compl., ¶14. They planned to sign the contracts and make a public announcement about the relationship at Market America's Leadership School in Miami on February 6, 2008, an event attended by more than 20,000 people. Id.

The complaint alleges that at the eleventh hour, Google informed Market America that Google had restructured its business model and that a services agreement directly with Google was not necessary. Compl., ¶17. The final services agreement would be only with LTech, even though Google would be involved in the implementation of the solution. Id.

## III.    THE CONTRACTS

On February 1, 2008, Market America and LTech signed a Services Agreement. Compl., ¶18; Jacobs Decl., Exh. A. On February 4, 2008, Google and Market America signed a License Agreement. Compl., ¶18; Jacobs Decl., Exh. B. The complaint alleges that through an "LTech Google Search Appliance Form" (Jacobs Decl., Exh. C), Market America acquired one GSA and related equipment and services, for a price of almost $1 million, "with an asserted capacity to handle 15 million documents, and an option to upgrade search capacity through the acquisition of additional licenses and [GSAs], with each additional license or machine providing an additional 15 million document capacity to the search capabilities, up to a purported capacity of 90 million documents." Compl., ¶18.

Attached to the Services Agreement was a Statement of Work (SOW). Compl., ¶19. The complaint alleges that the SOW, "consistent with the prior representations of both LTech and Google, committed to developing a solution which would: 'leverage the speed and power of the Google Search Appliance (GSA) platform to deliver relevant search results in a variety of formats and zones to empower Market America users with up-to-date and on-target product information. The GSA will generally serve search responses in sub one-second time frame.'" Id. The complaint claims that the SOW promised that provision of all services, together with acceptance testing, would be completed by June 15, 2008. Id.

Paragraph 16 of the Services Agreement contains the following choice-of-law provision and forum-selection clause:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the conflict of laws provisions thereof, and the state and federal courts located in that state shall have exclusive jurisdiction of [sic] the parties for the purposes of adjudicating all disputes that may arise under this Agreement. The parties hereby waive all objections to venue and personal jurisdiction in those forums for such disputes and agree that service of process may be made by in [sic] accordance with the notice provision of this Agreement.

Jacobs Decl., Exh. A, ¶16.

Similarly, paragraph 11 of the License Agreement contains the following choice-of-law provision and forum-selection clause:

> This Agreement and any claim or dispute of whatever nature arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware and the federal U.S. laws applicable therein, without giving effect to any choice of law principles that would require the application of the laws of a different state. You and Google agree to submit to the personal and exclusive jurisdiction of the courts located in New Castle County, Delaware.

Jacobs Decl., Exh. B, ¶11.

Paragraph 18 of the Services Agreement is entitled "Limitation on Warranties and Cap on Liability." In capital letters, that paragraph limits Market America's remedies against LTech and precludes recovery of indirect, special or consequential damages. Jacobs Decl., Exh. A, ¶16. Paragraph 8 of the License Agreement contains a similar limitation of liability. Id., Exh. B, ¶8.

## IV.  EVENTS AFTER THE EXECUTION OF THE CONTRACTS

The complaint alleges that on February 4, 2008, after the agreements were in place, Nitin Mangtani of Google stated in a joint press release: "We are pleased to work with Market America to deliver search capabilities to the over 3 million customers that shop there. Together we are implementing a search solution that will revolutionize the way Market America's customers shop online." Compl., ¶20.

On February 8, 2008, Market America announced the new Google relationship and the upcoming search capabilities to a crowd of more than 20,000 at the Market America Leadership School in Miami. Compl., ¶21. The complaint alleges that an LTech representative was on-stage as a Google representative, Cyrus Mistry, addressed the crowd. Id.

Market America alleges that it relied on "Google's and LTech's promises that an acceptable solution would be in place by June 15[.]" Compl., ¶23. It further alleges that when the GSA was installed in April 2008, testing showed a response time in the range of 8 to 15 seconds, and the system crashed at 15 queries per second. Compl., ¶24.

The complaint alleges that on June 25, 2008, with no effective solution at hand, Google's Head of Sales, Tom Mills, told Market America: "I can do nothing but apologize profusely for the delays in your project - I am truly sorry for that and promise you we are doing our best to find an effective solution." Compl., ¶25. On June 26, 2008, Mr. Mills allegedly suggested that it would be necessary "to scale back a bit from the initial plan to ensure a reasonable level of performance." Id., ¶26.

According to the complaint, during a conference call on or about June 30, 2008, "LTech's representatives suggested that they could implement a short term solution that would be 'more digestible.'" Compl., ¶27. Google's representatives allegedly stated that Google's current solution was not scalable to 30, 50 or 90 million products, and that the parties would need to look to a different long-term solution, which would necessarily use a different hardware configuration. Id. The complaint alleges that "Google's representatives specifically acknowledged that they needed to do a better job than they were doing, and promised to devote resources to a long-term solution." Id.

The complaint alleges that during a conference call on July 8, 2008, "Google representatives explicitly declared that its GSA could not perform any better, and confirmed that a different solution would need to be designed by Google's engineers." Compl., ¶28. "Throughout the summer," the complaint continues, "Google's engineers, on a daily basis, represented to Market America that resources were being used to produce a final search solution that would deliver what Google and LTech had promised." Id., ¶29.

The complaint alleges that neither Google nor LTech was able to find an effective solution or ensure a reasonable level of performance. Compl., ¶30. In July, Google allegedly proposed an interim solution that could handle 2 million documents. Id. Google allegedly assured Market America that its short-term solution would work while Google and LTech sought to implement an acceptable long-term solution. Id.

Market America's International Convention, held at the Greensboro Coliseum in North Carolina in August 2008, was attended by more than 20,000 people. Compl., ¶31. The complaint alleges that Google's Cyrus Mistry addressed the crowd to assure Market America's Independent Distributors, customers, vendors and partners that an acceptable solution would be

implemented.  Id.  Market America allegedly distributed video and news of this event throughout the Internet and in print, press releases, videos, television news stories and blog posts.  Id.

The complaint alleges that the proposed short-term solution went live during the International Convention, and the system crashed.  Compl., ¶32.  The complaint further alleges that in the crash's aftermath, Market America was left with a short-term fix that was no better than the search capabilities it already had in place before Google allegedly promised a better solution.  Id.

The complaint alleges that Independent Distributors and  partner stores began to express concern about the delays in the project, several partner store relationships were negatively affected and various potential partner stores either discontinued or delayed discussions about signing on as partners.  Compl., ¶33. The complaint further alleges that after being informed that Market America's search capabilities could not support the number of products required by such partners, some partners chose to remain as affiliate partners and some backed out of any relationship with Market America altogether.  Id.

The complaint alleges: "Market America continued to work with Google and LTech to develop a solution that would provide sub-second response times for the volume of products Market America needed and with the features that Google and LTech originally promised was [sic] possible, expending additional sums on additional hardware and computer programming and on internal resources, but after several months it became clear that Google and LTech could not meet their initial and ongoing promises."  Compl., ¶35.  "LTech began to advertise on its website, through a 'case study' that after Market America identified Google for its search engine to search over 50 million products, LTech had developed a search solution for 3 million products."  Id., ¶36.

The complaint alleges that by the end of 2008, Google and LTech remained unable to provide Market America with the promised long-term solution. Compl., ¶37. On January 2, 2009, Market America informed Google that it would not be proceeding with the implementation of a GSA-based enterprise search capacity. Id.

On July 6, 2009, Market America tendered back possession of the GSAs to Google and LTech. Compl., ¶38. Market America claims it has incurred and continues to incur significant costs in developing an alternative enterprise search capacity. Id., ¶39.

## ARGUMENT

## I.   STANDARDS OF REVIEW

### A.   Rule 12(b)(6)

"Rule 12(b)(6) permits a defendant to move for dismissal of a complaint for 'failure to state a claim upon which relief can be granted.'" Northern Mich. Hosps., Inc. Health Net Fed. Servs., LLC, 2008 WL 2233964, at *3 (D. Del. 2008). "To state a claim, the complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), thus 'giv[ing] the defendant fair notice of what the claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"The court must accept all factual allegations in a complaint as true and construe them in the light most favorable to plaintiff." Northern Mich. Hosps., 2008 WL 2233964, at *3. "But the court need not accept as true legal conclusions couched as allegations of fact." Id. "'[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Hutt v. Taylor, 2009 WL 838832, at *1 (D. Del. 2009) (quoting Twombly, 550 U.S. at 555) (alteration in original) (citation omitted). "The '[f]actual allegations must be enough to

raise a right to relief above the speculative level' on the assumption that all of the complaint's allegations are true." Hutt, 2009 WL 838832, at *1 (quoting Twombly, 550 U.S. at 555) (citations omitted).

**B.      Applicable Law**

Because jurisdiction is based on diversity of citizenship, this court must apply the substantive law of Delaware. Don's Hydraulics, Inc. v. Colony Ins. Co., 417 F. Supp. 2d 601, 610 (D. Del. 2006) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

Furthermore, paragraph 16 of the Services Agreement provides: "This Agreement shall be governed and construed in accordance with the laws of the State of Delaware without regard to the conflict of laws provisions thereof." See also License Agreement, ¶11. "The courts of Delaware will 'respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction.'" Paul v. Deloitte & Touche LLP, 2007 WL 2402987, at *4 (D. Del. 2007). Here, the "material relationship" is established by 6 Del. C. § 2708(a), which provides that when parties to a contract involving at least $100,000 agree that the contract shall be governed by Delaware law without regard to principles of conflict of laws, that agreement "shall conclusively be presumed to be a significant, material and reasonable relationship with this State and shall be enforced whether or not there are other relationships with this State." See Lloyd v. MBNA America Bank, N.A., 27 Fed. Appx. 82, 84 (3d Cir. 2002); Edelist v. MBNA America Bank, 790 A.2d 1249, 1255 (Del. Super. Ct. 2001).

The parties' contractual choice of law applies not only to construction of the contract but also to the fraudulent inducement claim and the other claims asserted in the complaint. "To hold that their choice is only effective as to the determination of contract claims, but not as to tort claims seeking to rescind the contract on grounds of misrepresentation, would create uncertainty

of precisely the kind that the parties' choice of law provision sought to avoid." Abry Partners V,

L.P. v. F & W Acquisition LLC, 891 A.2d 1032, 1048 (Del. Ch. 2006).

## II.   COUNTS I AND II SHOULD BE DISMISSED.

In Count I, Market America alleges fraudulent inducement.  It claims that defendants

"made false or materially misleading statements to Plaintiff about the capacity of a GSA-based

search solution to handle high volumes of documents at acceptable speeds"; that defendants

"knew these representations to be false when they were made" or made them with reckless

indifference to the truth; that the misrepresentations were material and were made "with the

intent that Market America would rely on the representations when deciding to enter into

contractual agreements with the Defendants"; and that Market America relied upon defendants'

representations to its detriment when it agreed to enter into the contracts.  Compl., ¶¶40-45.

Count II makes similar allegations in alleging fraud.  Id., ¶¶47-54.

### A.   The Complaint Fails to Plead Specific Facts Regarding Intent to Defraud.

The allegedly false promises related to future performance.  Market America claims that

Google and LTech "promised [that it] was possible" to achieve certain capabilities --

specifically, "to develop a solution that would provide sub-second response times for the volume

of products Market America needed...."  Compl., ¶35; see also id., ¶¶13 (alleging that Google

and LTech represented that they "could produce a solution") & 19 (alleging that LTech and

Google "committed to developing a solution").  Although Market America alleges that LTech

failed to deliver what was promised, it has not asserted a cause of action for breach of contract.

Market America cannot succeed in its attempt to convert this potential breach of contract

case into a fraud case.  Under Delaware law, "[t]o support a claim for fraud, the putative

misrepresentation must concern either a past or contemporaneous fact or a future event that

falsely implies an existing fact."  Winner Acceptance Corp. v. Return on Capital Corp., 2008 WL

5352063, at * 7 (Del. Ch. 2008) (footnote omitted). "An unfulfilled promise of future performance will not convert a potential contract claim into a claim sounding in fraud, unless at the time the promise was made the speaker had no intention of performing." Id. (footnote omitted).

Although Market America claims that LTech had no intention of performing at the time the purported promises were made, that is not the end of the inquiry. Delaware "looks with particular disfavor at allegations of fraud when the underlying utterances take the form of unfulfilled promises of future performance." Winner, 2008 WL 5352063, at * 9. One reason for this is that "unfulfilled promises generally provide grounds for breach of contract, rather than fraud claims." Id. (footnote omitted).

To avoid "the specter of parties using a claim for promissory fraud to pursue what in reality is a breach of contract cause of action," the Delaware Court of Chancery recently held: "[T]o state a claim for promissory fraud, a plaintiff must plead something more than a promise, mere nonperformance, justifiable reliance, damages, and a general averment of a culpable state of mind." Winner, 2008 WL 5352063, at * 10. "To state a claim for promissory fraud, the plaintiff also must plead specific facts that lead to a reasonable inference that the promissor had no intention of performing at the time the promise was made." Id. (emphasis added).

This requirement is consistent with this court's decision in Brown v. Buschman Co., 2002 WL 389139, at *8 (D. Del. 2002) (applying Wisconsin and Ohio law). In Brown, a Chapter 7 trustee alleged that defendants intentionally misrepresented their ability to install computer equipment at a company. The court dismissed the fraud claim with prejudice because, instead of pleading "specific facts" regarding intent to defraud, the Trustee "provided only

conclusory statements." <u>Id.</u> The complaint contained not even a single factual allegation "from which it could be inferred that the defendants intended to defraud [the company.]" <u>Id.</u>

The same is true here. Market America has provided only conclusory allegations regarding intent to defraud. It has not pleaded any "specific facts that lead to a reasonable inference that [LTech] had no intention of performing at the time the promise was made." <u>Winner</u>, 2008 WL 5352063, at * 10. Counts I and II should therefore be dismissed with prejudice. <u>Brown</u>, 2002 WL 389139, at *8.

### B. In Any Event, the Alleged Fraud Is Not Pled With the Requisite Particularity.

Furthermore, the fraud counts must be dismissed because they are not pled with the requisite particularity. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This particularity requirement is necessary "'in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 223-24 (3d Cir.), <u>cert. denied</u>, 543 U.S. 918 (2004).

Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements." <u>Klein v. General Nutrition Co.</u>, 186 F.3d 338, 345 (3d Cir. 1999). Nowhere does the complaint identify the speaker of LTech's alleged misrepresentations. The allegations are therefore "insufficient to survive a motion to dismiss." <u>Klein</u>, 186 F.3d at 345.

## III. COUNT III SHOULD BE DISMISSED.

Count III is captioned "Failure of Essential Purpose." Market America alleges that it would not have entered into the License Agreement with Google and the Service Agreement with LTech unless the Google GSAs could perform queries on between 30 and 90 million

products in sub one-second time frames. Compl., ¶56. As a result of defendants' alleged inability to fulfill those requirements, the complaint continues, "the License Agreement and Services Agreement have failed in their essential purpose and are totally lacking in consideration." Id., ¶58. On this basis, Market America claims entitlement to rescission and compensatory damages. Id., ¶59.

Delaware does not recognize a cause of action for "failure of essential purpose." Although the Uniform Commercial Code addresses the concept of failure of essential purpose, 6 Del. C. §2-719(2), that section "provide[s] for no cause of action, but rather describes remedies available[.]" Fatovic v. Chrysler Corp., 2003 WL 21481012, at *2, 4 (Del. Super. Ct. 2003) (dismissing claim). Therefore, Count III fails to state a claim upon which relief can be granted.

## IV.  COUNT IV SHOULD BE DISMISSED.

Count IV is captioned "Unfair and Deceptive Trade Practices." After incorporating the previous allegations, Count IV reads as follows:

> 61. The Defendants, jointly and severally[,] have engaged in unfair and deceptive trade practices in that each Defendant individually and in concert intentionally or recklessly represented their products and services as having characteristics and capabilities, which characteristics and capabilities the Defendants knew the products and services did not possess and were not capable of possessing. More specifically, each Defendant represented the Google GSA solution as having the capacity to query between 30 million products and 90 million products when they knew the Google appliances did not and could not possess such a capability. In addition, each Defendant represented the Google GSA solution as having the capacity to provide search responses for 30 million to 90 million products in a sub one-second time frame, when they knew the Google appliances did not and could not possess such a capability. At all times herein, Google and LTech continued to represent that they would be able to implement a long term solution that would function as they had promised.
>
> 62. The misrepresentations were in and affecting commerce in that they were designed to induce Plaintiff to enter into a Services

Agreement and Google Search Appliance order form with Defendant LTech, a License Agreement with Defendant Google, and expend significant sums of money in connection with those misrepresentations.

63. Market America relied to its detriment on the Defendants' misrepresentations and, as a direct result, incurred substantial damages.

64. As a direct and proximate result of Defendants' unfair and deceptive trade practices, Market America is entitled to compensatory and statutory, treble, exemplary and/or punitive damages.

In its prayer for relief, Market America again asks "[t]hat statutory, treble, exemplary and/or punitive damages be awarded against the Defendants because of their wrongful conduct[.]" Compl., page 15, subsection "f."

## A.    The Allegations Fail to Satisfy Rule 8(a)(2).

The complaint fails to identify the statute under which Market America seeks to recover for the alleged unfair and deceptive trade practices. By failing to identify the statute, Market America has failed to show that it is "entitled to relief," Fed. R. Civ. P. 8(a)(2), and it has deprived LTech of "fair notice of what the claim is and the grounds upon which it rests.'" Northern Mich. Hosps., 2008 WL 2233964, at *3 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555). Count IV thus fails to state a claim upon which relief can be granted.

Furthermore, as is the case with the fraud claims, Market America has provided no specific facts to support its assertion that "each Defendant individually and in concert intentionally or recklessly represented their products and services as having characteristics and capabilities" that defendants "knew the products and services did not possess and were not capable of possessing." The court need not accept such "legal conclusions couched as allegations of fact." Northern Mich. Hosps., 2008 WL 2233964, at *3. Market America's

"formulaic recitation of the elements of a cause of action will not do.'" Hutt v. Taylor, 2009 WL 838832, at *1 (quoting Twombly, 550 U.S. at 555).

**B.**     **Market America Cannot Recover Under Either of the Potentially Applicable Delaware Statutes.**

Although Market America has not identified the statute under which it hopes to recover, there are two potentially applicable Delaware statutes: the Delaware Consumer Fraud Act (CFA), 6 Del. C. §2511 et seq., and the Delaware Deceptive Trade Practices Act (DTPA), 6 Del. C. §2531 et seq. Market America has failed to assert a viable claim under either of these statutes.

The CFA applies only to unlawful practices "that take place within the State of Delaware." Langdon v. Google, Inc., 474 F. Supp. 2d 622, 633 (D. Del. 2007) (citing 6 Del. C. §2512); see also Goodrich v. E.F. Hutton Group, Inc., 542 A.2d 1200, 1203 (Del. Ch. 1988). Market America does not allege that any unlawful practices occurred in Delaware. Thus, even if the complaint is construed liberally as an attempt to plead a violation of the CFA, the claim must be dismissed because of the failure to plead this essential element. Langdon, 474 F. Supp. 2d at 633-34.

As for the DTPA, Market America lacks standing to bring the claim. "The Delaware Supreme Court has concluded that 'a litigant has standing under the DTPA only where such person has a business or trade interest at stake which is the subject of interference by the unfair or deceptive trade practice of another.'" Worldspan, L.P. v. Ultimate Living Group, LLC, 390 F. Supp. 2d 412, 414 (D. Del. 2005) (quoting Grand Ventures, Inc. v. Whaley, 632 A.2d 63, 70 (Del. 1993)). "Delaware's Consumer Fraud Act ... provides remedies for violations of the 'vertical' relationship between a consumer and a seller of services, while the DTPA is limited to redressing unreasonable or unfair interference with the 'horizontal' relationship between

businesses." Worldspan, 390 F. Supp. 2d at 414-15 (citing Grand Ventures, 632 A.2d at 70). Because Market America's relationship to defendants is that of a consumer to sellers of services, it lacks standing to bring a claim against LTech under the DTPA. Worldspan, 390 F. Supp. 2d at 415.

Moreover, "'[t]o sustain an action under the [DTPA], the plaintiff must assert a basis for injunctive relief and without it, there is no standing for a cause of action under the [DTPA].'" Lynch v. Coinmaster USA, Inc., 614 F. Supp. 2d 494, 504 (D. Del. 2009) (citation omitted). Market America is not seeking injunctive relief, and it has alleged no facts that would support such relief. Accordingly, even if the complaint is construed liberally as an attempt to plead a violation of the DTPA, the claim must be dismissed for lack of standing. Id.; Irgau v. Christiana Care Health Servs., 2008 WL 1724250, at *5 (Del. Super. Ct. 2008).

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed with prejudice.

COLE SCHOTZ MEISEL FORMAN &
LEONARD, P.A.


Michael F. Bonkowski (No. 2219)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 295-4913 (Phone)
(302) 652-3117 (Fax)
mbonkowski@coleschotz.com
Attorneys for Defendant,
LTech Consulting, LLC

Co-Counsel:
Peter J. Frazza (Admitted Pro Hac Vice)
Donald P. Jacobs (Admitted Pro Hac Vice)
BUDD LARNER, P.C.
150 John F. Kennedy Parkway
Short Hills, NJ 07078

DATED: August 31, 2009