## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MARKET AMERICA, INC.,                )
                                     )
                    Plaintiff,       )
                                     )
        vs.                          )  Civil Action No.  1:09-cv-00494-GMS
                                     )
GOOGLE INC. and                      )
LTECH CONSULTING, LLC,               )
                                     )
                    Defendants.      )

### OPENING BRIEF OF DEFENDANT GOOGLE INC. IN SUPPORT OF ITS
### MOTION TO DISMISS COUNTS I, II, AND III OF THE AMENDED COMPLAINT

OF COUNSEL:

Amy B. Ginensky
Andrea Toy Ohta
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750
ginenskya@pepperlaw.com
toyohtaa@pepperlaw.com

M. Duncan Grant (Del. Bar No. 2994)
Maria L. Panichelli (Del. Bar No. 5047)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Tel: (302) 777-6500
Fax: (302) 421-8390
grantm@pepperlaw.com
panichellim@pepperlaw.com

Dated:  October 19, 2009                    *Attorneys for Defendant Google Inc.*

# TABLE OF CONTENTS

Page

I.    THE NATURE AND STAGE OF PROCEEDINGS ......................................................... 1

II.   SUMMARY OF ARGUMENT ...................................................................................... 2

III.  STATEMENT OF FACTS ............................................................................................. 3

IV.   ARGUMENT ................................................................................................................. 9

      A.   The Court Should Dismiss Market America's Fraud Claims In Counts I And II Because Market America Has Not Alleged Facts To Plausibly Support An Essential Element Of The Claims -- That Google Knew That Its Statements Were False Or Was Recklessly Indifferent As To Their Truth. ............................. 9

      B.   The Court Should Dismiss Market America's "Rescission For Failure of Consideration" Claim In Count III Because Market America Has Not Alleged That Google Failed to Perform A Contract Term. ................................................. 17

V.    CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Abry Partners V, L.P. v. F & W Acquisition LLC, 891 A.2d 1032 (Del. Ch. 2006) ....................10

Amir El v. T Mobile, Civ. Action No. 09-128 (NLH), 2009 WL 936296 (D. Del. Apr. 6, 2009) .................................................................................................................................10

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).............................................................................. *passim*

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) ............................................................. *passim*

Brown v. Buschman Co., No. Civ. A. 99-108 (GMS), 2002 WL 389139 (D. Del. Mar. 12, 2002) .................................................................................................................................14

Collins & Aikman Corp. v. Stockman, Civ. No. 07-265-SLR, 2009 WL 1530120 (D. Del. May 20, 2009).......................................................................................................................14

Demarie v. Neff, No. Civ. A. 2077-S, 2005 WL 89403 (Del. Ch. Jan. 12, 2005)........................17

Kost v. Kozakiewicz, 1 F.3d 176 (3d Cir. 1993) ...........................................................................10

Liafail, Inc. v. Learning 2000, Inc., Nos. C.A. 01-599 GMS, C.A. 01-678 GMS, 2002 WL 31667861 (D. Del. Nov. 25, 2002) ...........................................................................18

Lum v. Bank of Am., 361 F.3d 217 (3d Cir. 2004) ....................................................................5, 9

Redbox Automated Retail LLC v. Universal City Studios LLP, Civil No. 08-766 (RBK), 2009 WL 2588748 (D. Del. Aug. 17, 2009) .........................................................................18

Sheehan v. Hepburn, 138 A.2d 810 (Del. Ch. 1958)....................................................................18

Solow v. Aspect Res., LLC, No. Civ.A. 20397, 2004 WL 2694916 (Del. Ch. Oct. 19, 2004) ............................................................................................................................14, 16

OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ....................................................................................................................10

## I. THE NATURE AND STAGE OF PROCEEDINGS

In filing this action and then amending its original Complaint, Market America, Inc. ("Market America") is trying to rewrite its contract with defendant Google Inc. ("Google") and rewrite the "facts."  In doing so, Market America attempts to convert a garden-variety contract dispute into a fraud case and escape the negotiated and agreed upon contractual terms that govern Google and Market America's relationship.  Those contractual terms spell out Google's obligations to Market America, expressly disclaim extra-contractual representations and warranties, and limit *each party's* liability stemming from this commercial relationship.  But rather than accept those terms and the remedies provided in the contract, on July 7, 2009, Market America filed a Complaint against Google and LTech Consulting, LLC ("LTech") asserting claims for fraud and seeking non-contractual remedies.  These claims stem from an alleged failed attempt to "develop and implement" a complicated, customized search technology to allow Market America's customers to search 30-90 million products in under a second.  (See, e.g., Compl., D.I. # 1, ¶¶ 11-13, 32, 39.)  On August 31, 2009, Google and LTech filed motions to dismiss the entire Complaint on the basis that Market America's claims were legally deficient and failed as a matter of law.  In response, on September 30, 2009, Market America filed an Amended Complaint asserting claims for:  (1) fraudulent inducement, (2) fraud, (3) rescission for failure of consideration, and (4) unfair and deceptive trade practices.

Although Market America initially described the defendants as working together to "develop" and "potentially" implement a search "solution" and thus acknowledged the uncertainty that a Google Search Appliance ("GSA")[1] could actually search 30-90 million products in under a second, Market America has rewritten its initial story.  (Compare Compl.,

---

[1] A GSA consists of rack-mounted computer servers with loaded software.  (Am. Compl., D.I. # 22, ¶ 12.)

D.I. # 1, ¶¶ 8, 10, 11, 12, 19 <u>with</u> Am. Compl., D.I. # 22, ¶¶ 8, 10, 11, 12, 21.) After reviewing the arguments raised in the defendants' first round of motions, Market America deleted the prior references that acknowledge this uncertainty in developing the GSA-based search technology. (<u>See, e.g.</u>, Am. Compl., D.I. # 22, ¶¶ 8, 10, 11, 12, 21.) Also, although contradicted by the Services Agreement between Market America and LTech – a contract that Market America referenced and quoted in its complaints – Market America has attempted to recast the GSA-based search technology as an out-of-the-box product that did not require any additional development or design services. (<u>Compare</u> Compl., D.I. # 1, ¶¶ 12, 19 <u>with</u> Am. Compl., D.I. # 22, ¶¶ 12, 21; <u>see also</u> Statement of Work at 2, attached as Exhibit A.)

But despite changing its initial story and having ample opportunity to amend its Complaint, Counts I, II, and III are still deficient as a matter of law and thus should be dismissed. Market America's attempt to pass off this failed commercial relationship as fraud and revise the "facts" to support cognizable claims is nothing more than a clumsy and unconvincing effort to avoid the contract. As such, Google submits this Opening Brief in Support of Its Motion to Dismiss Counts I, II, and III of the Amended Complaint and respectfully requests that the Court grant its motion and dismiss Counts I, II, and III.[2]

## II.    SUMMARY OF ARGUMENT

1.    Market America's fraud claims (Counts I and II) fail as a matter of law and should be dismissed because Market America has not satisfied Rule 8 of the Federal Rules of Civil Procedure. The Amended Complaint does not, as required by the United States Supreme

---

[2] Although Google believes that Count IV, an unfair and deceptive trade practices claim, fails as a matter of law and will ultimately be dismissed, the resolution of this claim requires a fact-based choice-of-law analysis that considers, among other facts, the negotiation of the choice-of-law provisions and the sophistication of the parties and their counsel. Such a fact-based analysis would be inappropriate at the motion to dismiss stage and will be briefed at a later time.

Court, allege *facts* to *plausibly* support a critical element of Market America's fraud claims --

that at the time it allegedly made the statements, Google knew the statements were false or was

recklessly indifferent as to their truth.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl.

Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  Market America's bald assertion that

"[d]efendants knew these representations to be false when they were made or the representations

were made with a reckless indifference to their truth or falsity" (Am. Compl., D.I. # 22, ¶¶ 44,

52) merely recites an element of a claim and is devoid of sufficient supporting factual

allegations.  Further, Market America's allegations that Google and LTech were never able to

provide it with a suitable search system, that *seven months after* making the alleged

misrepresentations Google acknowledged that the original technology could not perform as

hoped, and that Google would use its resources to produce a different solution (Am. Compl., D.I.

# 22, ¶¶ 9-12, 27-32, 37, 39) do not *plausibly* support an inference that *seven months earlier*

Google knowingly made false statements.

       2.     Market America's claim for rescission for failure of consideration (Count

III) fails as a matter of law and should be dismissed because Market America has not alleged that

Google breached or failed to perform a contractual term.

## III.    STATEMENT OF FACTS

       In the Fall of 2007, Market America reached out to Google to evaluate whether

Google's Internet search technologies could be used to "assist Market America in developing" a

search technology for its e-commerce business.[3]  (Am. Compl., D.I. # 22, ¶ 9.)  Market America

---

[3] Although Google disputes many of Market America's allegations, including the allegation that Google
represented that a GSA-based search technology could search between 30-90 million products in under a second, for
purposes of this motion, the Court must accept all of Market America's well-pleaded factual allegations as true.
Thus, because of the procedural posture of this case, this factual recitation is drawn from Market America's
Amended Complaint.

provides customers with an online shopping portal, similar to Amazon.com, that allows its customers to search for and purchase Market America-branded products and products sold by Market America partner stores using a one-stop "Universal Shopping Cart." (Am. Compl., D.I. # 22, ¶¶ 6, 7.) Market America was in the process of dramatically expanding the number of products available to its customers and sought an internal search technology so that its customers could quickly search the retail offerings of Market America partner stores. (Am. Compl., D.I. # 22, ¶¶ 7, 8.) Google introduced Market America to LTech, a New Jersey company and a Google "partner," to implement a new search system for Market America based on a GSA. (Am. Compl., D.I. # 22, ¶¶ 3, 10, 12.)

In November and December 2007, Market America, Google and LTech had several conversations and an in-person meeting at Market America's headquarters in North Carolina. (Am. Compl., D.I. # 22, ¶¶ 1, 9-14.) In early discussions, Market America informed Google and LTech that it needed a search system that could handle 30 million individual products (with the ability to handle 50 million products in 6 months and eventually 90 million products). (Am. Compl., D.I. # 22, ¶ 11.) Market America alleges that in November and December 2007, Google and LTech represented that they could implement a GSA-based search system that would meet Market America's needs and that could search 30 million products within 3 months and 60 million products within 6 months with a sub-second response time. (Am. Compl., D.I. # 22, ¶¶ 12, 14.)

On February 1, 2008, Market America and LTech entered into a Services Agreement. (Am. Compl., D.I. # 22, ¶ 20.) Pursuant to the Statement of Work (an exhibit to the Services Agreement), LTech agreed to design and develop a search solution described as follows:

> The Market America Next Generation Search and Merchandising Solution ("NextGen") ***will be designed and developed by LTech, in concert with MarketAmerica's technology and business teams***. The goal of NextGen is to provide a fast, comprehensive, and user-friendly search and merchandising experience for Market America's customers and administrators. The solution will leverage the speed and power of the Google Search Appliance (GSA) platform to deliver relevant search results in a variety of formats and zones to empower MarketAmerica users with up-to-date and on-target product information. The GSA will generally serve responses in sub one-second time frame.

(Statement of Work at 2, attached as Exhibit A (emphasis added).)[4]  The Amended Complaint alleges that LTech promised that it would provide all services, including testing, by June 15, 2008.  (Am. Compl., D.I. # 22, ¶ 21.)  Google was not a party to the Services Agreement.  (See Am. Compl., D.I. # 22, ¶¶ 19, 20.)

A few days later, on February 4, 2008, Market America and Google entered into a License Agreement, attached as Exhibit B.[5]  (Am. Compl., D.I. # 22, ¶ 20.)  The License Agreement sets forth the terms and conditions under which Market America could use certain Google proprietary software, hardware and documentation that it ordered from LTech, an authorized Google reseller.  (License Agreement at 1.)

---

[4] Although Market America did not attach a copy of the Services Agreement to its Amended Complaint, Market America refers to and quotes it and alleges that it relied on the alleged misrepresentations when deciding to enter into the Services Agreement.  (Am. Compl., D.I. # 22, ¶¶ 20, 21, 47, 55.)  On a motion to dismiss, a court may consider documents that are "integral to or explicitly relied upon in the complaint," so that a plaintiff cannot avoid dismissal of a legally deficient claim by failing to attach a document.  Lum v. Bank of Am., 361 F.3d 217, 220-21 & n.3 (3d Cir. 2004) (finding that the court could consider credit agreements not attached to amended complaint where plaintiffs alleged, among other allegations, that the defendants misrepresented that a prime interest rate was the lowest interest rate available to their most creditworthy borrowers).  As such, the Court may consider the Services Agreement in deciding this motion to dismiss.

[5] Although Market America did not attach a copy of the License Agreement to its Amended Complaint, Market America refers to it and alleges that it relied on the alleged misrepresentations when deciding to enter into the License Agreement.  (Am. Compl., D.I. # 22, ¶¶ 20, 47, 55.)  For the same reasons that the Court may consider the Services Agreement on a motion to dismiss, the Court may also consider the License Agreement in deciding this motion.

Notably, the License Agreement does not contain a representation that Google would develop and implement a GSA-based search technology that could search 30-90 million products in under a second. (See License Agreement.) It does, however, contain an integration clause and a disclaimer provision:

> This Agreement and related Order Form(s), and the terms or other provisions located at any Google uniform resource locators (URLs) referenced pursuant to this Agreement (which are all incorporated herein by reference), constitutes a complete, absolute integration and the entire agreement between the parties hereto relating to the subject matters of this Agreement, and supersedes all prior representations, proposals, discussions, and communications, whether oral or in writing, and all contemporaneous oral communications, and any terms contained in any related purchase order(s) or other documents pertaining to the subject matter of this Agreement shall be null and void. This Agreement may be modified only in writing signed by both parties.

> Disclaimer. EXCEPT AS SPECIFIED IN THIS SECTION, ALL EXPRESS OR IMPLIED CONDITIONS, REPRESENTATIONS AND WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT AND ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, ARE HEREBY DISCLAIMED EXCEPT TO THE EXTENT THAT THESE DISCLAIMERS ARE HELD TO BE LEGALLY INVALID. GOOGLE MAKES NO WARRANTIES OR REPRESENTATIONS WITH RESPECT TO ANY THIRD PARTY SOFTWARE PROVIDED AS PART OF, OR IN CONNECTION WITH, PRODUCT. IN ADDITION, GOOGLE EXPRESSLY DISCLAIMS ANY WARRANTY OR REPRESENTATION TO ANY PERSON OTHER THAN CUSTOMER WITH RESPECT TO PRODUCT OR ANY PART THEREOF. THE PRODUCT AND SERVICES ARE PROVIDED BY GOOGLE AND ITS LICENSORS ARE OTHERWISE PROVIDED "AS IS". GOOGLE AND ITS LICENSORS DO NOT WARRANT THAT THE PRODUCT OR ANY PORTION THEREOF, ARE ERROR OR BUG FREE, OR THAT YOUR USE OF THE PRODUCT OR SERVICES WILL BE UNINTERRUPTED. GOOGLE AND ITS LICENSORS ASSUME NO RESPONSIBILITY FOR THE PROPER INSTALLATION AND USE OF THE PRODUCT. GOOGLE AND ITS LICENSORS MAKE NO REPRESENTATIONS ABOUT ANY CONTENT OR INFORMATION MADE ACCESSIBLE BY THE PRODUCT. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSION MAY NOT APPLY TO YOU. IN THAT EVENT, TO THE EXTENT PERMISSIBLE, ANY IMPLIED WARRANTIES ARE LIMITED IN DURATION TO NINETY (90) DAYS FROM THE DATE OF SHIPMENT OF THE APPLICABLE PRODUCT. THE PRODUCT IS NOT FAULT TOLERANT AND IS NOT DESIGNED,

-6-

MANUFACTURED, OR INTENDED FOR USES SUCH AS THE OPERATION OF NUCLEAR FACILITIES, AIR TRAFFIC CONTROL OR LIFE SUPPORT SYSTEMS, WHERE THE FAILURE OF THE PRODUCT COULD LEAD TO DEATH, PERSONAL INJURY, OR ENVIRONMENTAL DAMAGE ("**HIGH RISK ACTIVITIES**").

(License Agreement §§ 7.4, 11.)  The License Agreement also contains a limitation of liability provision that expressly limits *both parties'* liability:

**LIMITATION OF LIABILITY.**  EXCEPT FOR CUSTOMER'S BREACH OF ANY LICENSE IN THIS AGREEMENT OR [*sic*] ANY AMOUNTS PAYABLE TO THIRD PARTIES PURSUANT TO THE PARTIES' INDEMNIFICATION OBLIGATIONS HEREUNDER, IN NO EVENT WILL EITHER PARTY OR GOOGLE'S LICENSORS BE LIABLE (i) FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOST DATA, LOST PROFITS, OR COSTS OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, HOWEVER CAUSED (INCLUDING BUT NOT LIMITED TO USE, MISUSE, INABILITY TO USE, OR INTERRUPTED USE) AND UNDER ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED TO CONTRACT OR TORT AND WHETHER OR NOT EITHER PARTY WAS OR SHOULD HAVE BEEN AWARE OR ADVISED OF THE POSSIBILITY OF SUCH DAMAGE REGARDLESS OF WHETHER ANY REMEDY SET FORTH IN THIS AGREEMENT FAILS OF ITS ESSENTIAL PURPOSE; OR (ii) FOR ANY CLAIM ATTRIBUTABLE TO ERRORS, OMISSIONS, OR OTHER INACCURACIES IN THE PRODUCT OR DESTRUCTIVE PROPERTIES OF THE PRODUCT.  IN NO EVENT SHALL GOOGLE'S AND/OR ITS LICENSORS' TOTAL AGGREGATE LIABILITY UNDER THIS AGREEMENT EXCEED THE AMOUNT OF FEES PAID BY CUSTOMER UNDER THE ORDER FORM GIVING RISE TO SUCH LIABILITY.

(License Agreement § 8.)

Moreover, the License Agreement contains a broad Delaware choice-of-law provision, which provides that "[t]his Agreement *and any claim or dispute of whatever nature arising out of or relating to this Agreement* shall be governed by and construed in accordance with the laws of the State of Delaware and the federal U.S. laws applicable therein, without giving effect to any choice of law principles that would require the application of the laws of a different state."  (License Agreement § 11 (emphasis added).)

Around February 4, 2008, Market America acquired from LTech one GSA model 800815MDNSTD and related equipment and services through an LTech GSA Order Form and in April 2008, the GSA was installed at Market America. (Am. Compl., D.I. # 22, ¶¶ 20, 26.)

LTech tested the system and it had a response time in the 8 to 15 second range. (Am. Compl., D.I. # 22, ¶ 26.) According to the Amended Complaint, several months later, in June 2008, "after the date that the system was supposed to be up and running, and with no effective GSA appliances on hand," Google "suggested that it would be necessary 'to scale back a bit from the initial plan to ensure a reasonable level of performance.'" (Am. Compl., D.I. # 22, ¶¶ 27, 28.) The following month -- ***seven months after*** Google and LTech allegedly represented that they could implement a suitable GSA-based search system -- Google said that the GSA "could not perform any better, and confirmed that a different system would need to be installed." (Am. Compl., D.I. # 22, ¶¶ 12, 14, 30.) Google told Market America that resources were being used to produce a final search system. (Am. Compl., D.I. # 22, ¶ 31.)

In early August 2008, a proposed short-term search system crashed when it was unveiled at Market America's International Convention (Am. Compl., D.I. # 22, ¶¶ 33, 34); during the same week "Google publicly advertised that it was to sell a GSA system that could handle up to 10 million documents" (Am. Compl., D.I. # 22, ¶ 36). Nonetheless, Market America "continued to work with Google and LTech to develop a GSA system that would provide sub-second response times." (Am. Compl., D.I. # 22, ¶ 37.)

By the end of 2008, Google and LTech had not implemented a GSA-based search system that Market America found acceptable. (Am. Compl., D.I. # 22, ¶ 39.) On January 2, 2009, Market America informed Google that it would not proceed with implementing a GSA-based search technology. (Am. Compl., D.I. # 22, ¶ 39.) On June 24, 2009, Market America

#11574973 v5

issued a press release announcing that it had successfully implemented a different search technology, Microsoft's FAST ESP technology. (See Press Release, Market America, Market America Implements Microsoft Fast for Site Search of Tens of Millions of SKUs (June 24, 2009) (available through LexisNexis).[6]) On July 6, 2009, Market America tendered the GSAs to Google and LTech. (Am. Compl., D.I. # 22, ¶ 40.) The following day, on July 7, 2009, Market America filed a Complaint in this action.

## IV.   ARGUMENT

### A.   The Court Should Dismiss Market America's Fraud Claims In Counts I And II Because Market America Has Not Alleged Facts To Plausibly Support An Essential Element Of The Claims -- That Google Knew That Its Statements Were False Or Was Recklessly Indifferent As To Their Truth.

Market America has asserted two related common law fraud claims against defendants: a fraudulent inducement claim (Count I) and a fraud claim (Count II). The thrust of these claims is that Google and LTech intentionally misrepresented that they could implement a GSA-based search system that would meet Market America's needs. (E.g., Am. Compl., D.I. # 22, ¶¶ 12, 14, 43, 50.) The fraud claim (Count II) is based on an additional allegation: Market America alleges that after the GSA was installed, Google and LTech misrepresented that an acceptable, long-term, GSA-based system could be implemented. (E.g., Am. Compl., D.I. # 22, ¶¶ 31, 51.)

Here, despite having an opportunity to amend its Complaint and the seriousness of accusing Google of engaging in fraud, Market America has failed to satisfy Rule 8. The Amended Complaint does not allege ***facts*** to ***plausibly*** support a critical element of the fraud

---

[6] The press release is not mentioned in the Amended Complaint, but on a motion to dismiss, a court may consider "matters of public record." Lum, 361 F.3d at 221 n.3.

#11574973 v5

claims -- that, at the time it allegedly made the statements, Google knew they were false or was recklessly indifferent as to their truth.[7] Thus, these claims fail as a matter of law.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff's obligation to satisfy the federal pleading requirements of Rule 8 and "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (citing <u>Papason v. Allain</u>, 106 S. Ct. 2932, 2944 (1986)). A "naked assertion," devoid of "further factual enhancement," is not sufficient either. <u>Id.</u> at 1966. Rather, as explained by the United States Supreme Court, Rule 8 requires "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). While the plausibility standard is not a probability requirement, it requires more than showing a "sheer possibility" or pleading facts that are "merely consistent" with the defendant's liability. <u>Id.</u> Thus, the Supreme Court has set forth a two-pronged approach for assessing the adequacy of a complaint:

> ***First***, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed

---

[7] To state a common law fraud claim under Delaware law, a plaintiff must allege ***facts*** supporting an inference that: (1) defendant falsely represented or omitted facts that the defendant had a duty to disclose, (2) ***defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth***, (3) defendant intended to induce the plaintiff to act or refrain from acting, (4) plaintiff acted in justifiable reliance on the representation, and (5) plaintiff was injured by its reliance. <u>Abry Partners V, L.P. v. F & W Acquisition LLC</u>, 891 A.2d 1032, 1050 (Del. Ch. 2006) (emphasis added); <u>Amir El v. T Mobile</u>, Civ. Action No. 09-128 (NLH), 2009 WL 936296, at *3 (D. Del. Apr. 6, 2009). Although knowledge and state of mind are not subject to Rule 9(b)'s heightened pleading standard for fraud, Fed. R. Civ. P. 9(b), they are still subject to "the less rigid -- though still operative -- strictures of Rule 8," <u>Iqbal</u>, 129 S. Ct. at 1954.

> with nothing more than conclusions. ***Second***, only a complaint that states a
> plausible claim for relief survives a motion to dismiss. . . . where the well-pleaded
> facts do not permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged – but it has not "show[n]" – that the
> pleader is entitled to relief.

Iqbal, 129 S. Ct. at 1949-50 (emphasis added).  In applying these principles, the Supreme Court

has taken a hard look at the ***facts*** alleged in complaints and has rejected claims where the facts

are merely consistent with "an obvious alternative explanation."  Twombly, 127 S. Ct. at 1972-

74; Iqbal, 129 S. Ct. at 1951-52.

  In Twombly, for example, consumers brought a putative class action against

incumbent local exchange carriers ("ILECs") alleging an antitrust conspiracy in violation of § 1

of the Sherman Act.  127 S. Ct. at 1962.  Section 1 of the Sherman Act prohibits restraints of

trade "effected by a contract, combination, or conspiracy," i.e., an agreement.  Id. at 1964

(internal quotation marks omitted).  One of the issues before the Supreme Court was whether the

plaintiffs had satisfied Rule 8 by alleging facts "plausibly suggesting (not merely consistent

with)" an agreement.  Id. at 1965-66.

  In support of their claim, the plaintiffs alleged that the ILECs engaged in a

contract, combination, or conspiracy and agreed not to compete with one another.  Id. at 1970.

The Supreme Court found that these allegations were "merely legal conclusions" and thus did

not satisfy Rule 8.  Id. at 1970, 1974.  The plaintiffs also alleged that the ILECs engaged in a

parallel course of conduct to prevent competition from the competitive local exchange carriers

("CLECs").  Id. at 1970.  The Supreme Court found that this was insufficient to plausibly

suggest a conspiracy because there was nothing in the complaint to suggest that such conduct

was "anything more than the natural, unilateral reaction of each ILEC intent on keeping its

regional dominance" and that this economic incentive to resist competition was "routine market

conduct."  Id. at 1971, 1973.  The plaintiffs also alleged that there was an absence of any

meaningful competition between the ILECs in one another's markets.  Id. at 1970.  As to this allegation, the Supreme Court reasoned that because there was an "obvious alternative explanation," which was "that the former Government-sanctioned monopolists were sitting tight, expecting their neighbors to do the same," this too failed to plausibly suggest a conspiracy.  Id. at 1972-73.  As a result, the Supreme Court held that none of the factual allegations plausibly suggested a conspiracy and that the plaintiffs failed to state a claim.  Id. at 1970-74.

Similarly, in Iqbal, the plaintiff brought a discrimination claim against Attorney General John Ashcroft and FBI director Robert Mueller.  129 S. Ct. at 1943.  In November 2001, plaintiff had been arrested for fraud and conspiracy to defraud in connection with identification documents.  Id.  He was subsequently designated a person "of high interest" to the September 11 investigation and placed in the Metropolitan Detention Center.  Id. at 1943.  The plaintiff, a citizen of Pakistan and a Muslim, alleged that Mr. Ashcroft and Mr. Mueller designated him a person of high interest on account of his race, religion, or national origin, in violation of the First and Fifth Amendments.  Id. at 1942, 1944.  A critical element of the plaintiff's claim was that the defendants acted with discriminatory purpose -- that is, that the defendants "adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin."  Id. at 1948-49.

In support of his claim, the plaintiff alleged that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of public policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" that Mr. Ashcroft was the "'principal architect'" of this policy, and that Mr. Mueller was "'instrumental'" in adopting and executing the policy.  Iqbal, 129 S. Ct. at 1951 (alterations in original).  The Supreme Court found that

these conclusory statements "amount[ed] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" and thus did not satisfy Rule 8. <u>Id.</u> at 1951, 1954 (quoting <u>Twombly</u>, 127 S. Ct. at 1955). The plaintiff also alleged that "'the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11,'" and that "'[t]he policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001.'" <u>Id.</u> at 1951 (alterations in original). As to these allegations, the Supreme Court found that while they were consistent with a discriminatory purpose, they did not plausibly establish a discriminatory purpose because there was an "obvious alternative explanation" -- that the legitimate policy of arresting and detaining individuals thought to be involved in the September 11 attacks would produce a disparate, incidental impact on Arabs and Muslims. <u>Id.</u> at 1951-52. The Supreme Court further reasoned that the allegation that Mr. Ashcroft and Mr. Mueller approved the policy only "plausibly suggests . . . that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity." <u>Id.</u> at 1952. As such, the Supreme Court held that the complaint failed to plead sufficient facts to plausibly state a claim for purposeful and unlawful discrimination. <u>Id.</u> at 1954.

In applying the scrutiny required by <u>Twombly</u> and <u>Iqbal</u> to Market America's Amended Complaint, it becomes abundantly clear that Market America has not alleged facts to plausibly suggest that before and at the time of contract formation Google knew that a GSA-based search system could not meet Market America's needs or was recklessly indifferent to

whether it could.  Market America simply alleges that "[d]efendants knew these representations to be false when they were made or the representations were made with a reckless indifference to their truth or falsity."  (Am. Compl., D.I. # 22, ¶¶ 44, 52.)  As was the case in <u>Twombly</u> and <u>Iqbal</u>, these allegations merely parrot the language of an element of the claim and are not enough to satisfy Rule 8.  <u>Twombly</u>, 127 S. Ct. at 1970; <u>Iqbal</u>, 129 S. Ct. at 1951; <u>accord</u> <u>Brown v. Buschman Co.</u>, No. Civ. A. 99-108 (GMS), 2002 WL 389139, at *9 (D. Del. Mar. 12, 2002) (dismissing fraud claim without leave to amend because plaintiff "provided only conclusory statements regarding the intent to defraud" and failed to allege any facts to support scienter); <u>Collins & Aikman Corp. v. Stockman</u>, Civ. No. 07-265-SLR, 2009 WL 1530120, at *26 n.16 (D. Del. May 20, 2009) (recommending that the fraud claim be dismissed because "Plaintiffs fail[ed] to adequately allege that the Auditor Defendants knew they were making false representations").

Market America does allege that Google and LTech were never able to provide it with a suitable GSA-based search system and that in June 2008 Google acknowledged that the GSA-based search system did not perform as hoped and subsequently began to work on an alternative system.  (Am. Compl., D.I. # 22, ¶¶ 27-32, 37, 39.)  These allegations, however, do not plausibly suggest that Google knew that its statements when made ***seven months earlier*** were false or was recklessly indifferent as to their truth.  Even if by June 2008 Google told Market America that the original GSA-based search system could not perform, these allegations are not circumstantial evidence of Google's knowledge or recklessness ***seven months earlier***, in November and December 2007, when Google and LTech allegedly represented that they could implement a suitable search system.  Representations are only fraudulent if the speaker knew them to be untrue or was reckless as to their truth ***at the time they were made***.  <u>Solow v. Aspect Res., LLC</u>, No. Civ.A. 20397, 2004 WL 2694916, at *2 (Del. Ch. Oct. 19, 2004) (explaining that

-14-

fraud plaintiff must show that defendant "knew or believed . . . statement [at issue] to be false ***at the time it was made***, or . . . made the statement with reckless indifference to the truth" (emphasis added)).

The remaining allegations -- that Google worked on and proposed an alternative system or that Google and LTech never provided a suitable search system -- do not plausibly suggest fraud either. Rather, like the allegations in <u>Twombly</u> and <u>Iqbal</u>, Market America's factual allegations are consistent with an "obvious alternative explanation." Here, that explanation is that Market America sought a complicated, customized search technology and despite everyone's best efforts, it could not perform as hoped. (<u>See</u> Am. Compl., D.I. # 22, ¶¶ 9-16, 21, 27-32, 37, 39.)

In its Amended Complaint, Market America deleted references to the words "potentially," "develop," and "solution" which it employed in its original Complaint to describe what the parties had attempted to accomplish:

> Google introduced Market America to LTech, a Google "partner" and member of the Google Enterprise Professional program, to ~~***potentially***~~ implement a new Internet search ~~***solution***~~ ***system*** for Market America.

> . . . Google further represented that, by partnering with their authorized representative LTech (to whom Google explicitly directed Market America), together Google and LTech could ~~***develop and***~~ implement a ***GSA-based*** ~~***solution***~~ ***system*** that would meet all of Market America's enterprise search needs . . .

> Attached to the Services Agreement was a Statement of Work ("SOW"), which, consistent with the prior representations of both LTech and Google, committed to ~~***developing a solution***~~ ***implementing a GSA system*** which would . . .

(<u>Compare</u> Compl., D.I. # 1, ¶¶ 10, 12, 19 <u>with</u> Am. Compl., D.I. # 22, ¶¶ 10, 12, 21 (emphasis and strikethroughs added to reflect amendments).) But simply striking words from the Amended Complaint does not permit Market America to turn its arrangement with Google and LTech into

-15-

a promise to provide an off-the-shelf product that could be plugged in and used in an e-commerce setting.

Indeed, Market America's other allegations acknowledge that LTech was brought in as a Google "partner" to "leverage the speed and power of the Google Search Appliance (GSA) platform to deliver relevant search results" and that Market America and LTech entered into a Services Agreement. (Am. Compl., D.I. # 22, ¶¶ 9-12, 20, 21.) The Statement of Work (an exhibit to the Services Agreement and referenced by Market America) makes clear that LTech was brought in to customize the GSA:

> The Market America Next Generation Search and Merchandising Solution ("NextGen") will be ***designed and developed by LTech***, in concert with MarketAmerica's technology and business teams.

(Statement of Work at 2 (emphasis added), attached as Exhibit A.) Pursuant to the Services Agreement, LTech agreed to provide numerous services, including complicated software architecture and the development of a GSA Bridge that would "provide[] the interface for the MarketAmerica website to query for search results, zone data, comparison-shopping, etc." (Statement of Work at 2, 3.) Furthermore, throughout its Amended Complaint Market America refers to the technology as a "GSA-based system" (e.g., Am. Compl., D.I. # 22, ¶¶ 12, 14) and alleges that Google and LTech worked with Market America to "develop" an alternative GSA-based search system (Am. Compl., D.I. # 22, ¶ 37). Although the parties were never able to implement a search system that satisfied Market America, this inability to implement a complicated, customized technology is not indicative of fraud. See Solow, 2004 WL 2694916, at *3 (noting that "poor performance in one venture and better results in a later venture does not reasonably imply that defendants made false representations . . . especially considering . . . 'the vagaries'" of the specific venture). Rather, Market America's allegations are entirely consistent with the "obvious alternative explanation" that despite everyone's best efforts to customize the

-16-

GSA for Market America's e-commerce needs the GSA-based search system just could not perform as hoped. Market America's allegations are also consistent with the inference that at the time Google allegedly made the statements Google believed that a customized, GSA-based search system could meet Market America's needs. Even if such a belief was overly optimistic and turned out to be wrong, this is not enough to transform a failed commercial venture into fraud. Quite simply, Market America has not alleged any facts from which it can be inferred that Google acted with the requisite scienter.

Under these circumstances, because Market America's factual allegations fail to "nudge" the fraud claims "across the line from conceivable to plausible," the door to expensive and intrusive discovery should not be unlocked to Market America. <u>Twombly</u>, 127 S. Ct. at 1974. Market America should not be allowed to avoid the very contract that it negotiated and signed or shoe horn these revised facts into a fraud claim; its fraud claims should be dismissed.

**B.** **The Court Should Dismiss Market America's "Rescission For Failure of Consideration" Claim In Count III Because Market America Has <u>Not Alleged That Google Failed to Perform A Contract Term.</u>**

Perhaps recognizing that it has not alleged sufficient facts to support the scienter element of its fraud claims and that any remedy lies in contract, Market America has brought a claim for "rescission for failure of consideration." This claim is based on the allegation that Google did not provide a GSA-based search technology "which fulfilled the requirements of performing queries on between 30 million products and 90 million products in sub one-second time frames," thus the License Agreement between Google and Market America failed its "essential purpose." (Am. Compl., D.I. # 22, ¶¶ 59, 60.) In other words, in Count III, Market America is alleging that Google breached a contract and is seeking rescission as a remedy.

To state such a claim for rescission, Market America must allege that Google materially breached or failed to substantially perform a term of the License Agreement. <u>Demarie</u>

v. Neff, No. Civ. A. 2077-S, 2005 WL 89403, at *4 (Del. Ch. Jan. 12, 2005) (stating the rule that "[a] party may terminate or rescind a contract because of substantial nonperformance or breach by the other party") (quotation marks omitted); Liafail, Inc. v. Learning 2000, Inc., Nos. C.A. 01-599 GMS, C.A. 01-678 GMS, 2002 WL 31667861, at *3 (D. Del. Nov. 25, 2002) ("It is well-settled that a material breach of a contract gives the non-breaching party the right to rescind that contract."); Sheehan v. Hepburn, 138 A.2d 810, 812 (Del. Ch. 1958) (noting that "an unjustified failure to perform basic terms of a contract warrants rescission").

Market America suggests that pursuant to the terms of the License Agreement, Google had a contractual obligation to provide a GSA that would search between 30 million and 90 million products in under a second. (Am. Compl., D.I. # 22, ¶ 58.) But this claim fails because there is no such term in the License Agreement. Market America has failed to identify the provision in the License Agreement or the Order Form (which is incorporated by reference)[8] that sets forth this contractual obligation. And, nowhere in the License Agreement or the Order Form is there a representation that the GSA would search up to 90 million products in under a second. (See License Agreement; Order Form.)[9] While on a motion to dismiss, the court accepts a plaintiff's well-pleaded factual allegations as true, where a complaint's factual allegations contradict documents properly considered on a motion to dismiss, the court need not accept the truth of those allegations. See Redbox Automated Retail LLC v. Universal City Studios LLP, Civil No. 08-766 (RBK), 2009 WL 2588748, at *5-*7 (D. Del. Aug. 17, 2009) (granting motion to dismiss tortious interference with contract claim because although plaintiff alleged that Universal interfered with a third party's contractual obligation to sell Universal

---

[8] See License Agreement § 11.

[9] A copy of the Order Form is attached as Exhibit C.

#11574973 v5

DVDs to plaintiff, the contract "belies the claim as asserted" and the contract does not contain such a contractual obligation).

Accordingly, Market America's claim for rescission fails as a matter of law and should be dismissed.

## V.  CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant its motion and dismiss Counts I, II, and III of Market America's Amended Complaint.

Respectfully submitted,

OF COUNSEL:

Amy B. Ginensky
Andrea Toy Ohta
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750
ginenskya@pepperlaw.com
toyohtaa@pepperlaw.com

Dated:  October 19, 2009

/s/  *Maria L. Panichelli*
M. Duncan Grant (Del. Bar No. 2994)
Maria L. Panichelli (Del. Bar No. 5047)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Tel: (302) 777-6500
Fax: (302) 421-8390
grantm@pepperlaw.com
panichellim@pepperlaw.com

*Attorneys for Defendant Google Inc.*

#11574973 v5

## <u>CERTIFICATE OF SERVICE</u>

I, Maria L. Panichelli, hereby certify that on October 19, 2009, a true and correct copy of the foregoing Opening Brief of Defendant Google Inc. in support of its Motion to Dismiss Counts I, III, and III of the Amended Complaint was filed with the Clerk of Court using CM/ECF, which will send notification to the following counsel of record:

Matthew F. Lintner
Richard K. Herrmann
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

*Attorney for Plaintiff Market America, Inc.*

Michael F. Bonkowski
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

*Attorney for Defendant LTech Consulting, LLC*

/s/ *Maria L. Panichelli*
Maria L. Panichelli (#5047)