## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **MARKET AMERICA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 09-494 (GMS)** |
| | ) | |
| **GOOGLE, INC. and** | ) | |
| **LTECH CONSULTING, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

### COMBINED ANSWERING BRIEF OF PLAINTIF MARKET AMERICA, INC. IN OPPOSITION TO DEFENDANT GOOGLE, INC. AND DEFENDANT LTECH CONSULTING, LLC'S MOTIONS TO DISMISS <u>COUNTS I, II AND III OF THE AMENDED COMPLAINT</u>

**MORRIS JAMES LLP**

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
Matthew F. Lintner (#4371)
Jody C. Barillare (#5107)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com
mlintner@morrisjames.com
jbarillare@morrisjames.com

*Attorneys for Plaintiff*
*MARKET AMERICA, INC.*

Dated: November 2, 2009

# TABLE OF CONTENTS

**PAGE**

NATURE AND STAGE OF PROCEEDINGS ...............................................................................1

SUMMARY OF ARGUMENT ...................................................................................................2

STATEMENT OF FACTS .........................................................................................................3

ARGUMENT ............................................................................................................................9

    I.   THE AMENDED COMPLAINT PLEADS FRAUD WITH SUFFICIENT
        PARTICULARITY .........................................................................................................9

        A.  Market America Has Alleged Facts Sufficient to Allow the Court to Draw an
             Inference that the Defendants are Liable for the Misconduct Alleged .........................9

        B.  Defendants' Statements about the Capabilities of the GSAs were Contemporaneous
             Statements about the Capabilities of their Technology, not Unfulfilled Promises of
             Future Performance ...................................................................................................13

    II.  THE AMENDED COMPLAINT ASSERTS A VALID CLAIM FOR RESCISSION
        BASED UPON FAILURE OF CONSIDERATION ........................................................16

        A.  Google and LTech Failed to Substantially Perform Their Explicit Obligations
             Under the Agreements ...............................................................................................18

        B.  Google and LTech Failed to Substantially Perform Their Obligations Under the
             Agreements as Clarified by Their Contemporaneous Statements ...............................19

CONCLUSION .......................................................................................................................21

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Appriva S'holder Litig. Co., LLC v. ev3, Inc.*,
   937 A.2d 1275 (Del. 2007) ........................................................................19

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...............................................2, 9, 10, 11, 13

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...............................2, 9, 10, 13

*Christenson v. Friendly Ford Sales, Inc.*,
   169 S.E.2d 542 (N.C. App. 1969) ...............................................................16

*Demarie v. Neff*, 2005 WL 89403 (Del. Ch. Jan 12, 2005) ........................................18

*Dewey v. Volkswagen AG*,
   558 F. Supp. 2d 505 (D.N.J. 2008) ..............................................................12

*Fowler v. UPMC Shadyside*,
   2009 WL 2501662 (3d Cir. Aug. 18, 2009)..........................................9, 10, 11, 13

*Hibernia National Bank v. Carner*,
   997 F.2d 94 (5th Cir. 1993) ......................................................................15

*Institutional Investors Group v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009).......................................................................17

*Kelley v. Crosfield Catalysts*,
   135 F.3d 1202 (7th Cir. 1998) ....................................................................15

*PharmAthene, Inc. v. SIGA Tech., Inc.*,
   2008 WL 151855 (Del. Ch. Jan. 16, 2008)........................................................19

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008).............................................................9, 10, 11, 12

*Reybold Venture Group XI-A, LLC v. Atlantic Meridian Crossing, LLC*,
   2009 WL 143107 (Del. Super. Jan. 20, 2009) ....................................................16

*In re Rockefeller Center Properties, Inc. Securities Litig.*,
   311 F.3d 198 (3d Cir. 2002)...................................................................12, 13

*Scherer v. Pennsylvania Dept. of Corrections*,
   2007 WL 4111412 (W.D. Pa. Nov. 16, 2007) ....................................................15

*Sheehan v. Hepburn*,
   138 A.2d 810 (Del. Ch. 1958) ............................................................16

*Snyder v. Pascack Valley Hospital*,
   303 F.3d 271 (3d Cir. 2002) ...............................................................15

*Spartan Leasing Inc. v. Pollard*,
   400 S.E.2d 476 (N.C. App. 1991) .......................................................14

*Spear Pharmaceuticals, Inc. v. William Blair & Co., LLC*,
   610 F. Supp. 2d 278 (D. Del. 2009) ....................................................10

*Sun Microsystems, Inc. v. Versata Enterprises, Inc.*,
   2009 WL 1904369 (D. Del. Jul. 1, 2009) .................................9, 10, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...........................................................................17

*United Engineers & Constructors, Inc. v. Babcock & Wilcox Co.*,
   1993 WL 50309 (Del. Ch. Feb. 11, 1993) ...........................................16

*United Rentals, Inc. v. RAM Holdings, Inc.*,
   937 A.2d 810 (Del. Ch. 2007) .......................................................19, 20

*Univ. of North Carolina v. Shoemate*,
   437 S.E.2d 892 (N.C. App. 1994) .......................................................16

*U.S. West, Inc. v. Time Warner Inc.*,
   1996 WL 307445 (Del. Ch. June 6, 1996) ...................................... 19-20

*White Sewing Mach. Co. v. Bullock*,
   76 S.E. 634 (N.C. 1912) ......................................................................14

*Winner Acceptance Corp. v. Return on Capital Corp.*, z
   2008 WL 5352063 (Del. Ch. Dec. 23, 2008) ................................11, 14

**RULES**

Fed. R. Civ. P. 8 ...............................................1, 2, 9, 10, 11, 12

Fed. R. Civ. P. 9(b) .....................................................1, 11, 12

Fed. R. Civ. P. 12(b)(6).........................................9, 10, 15, 17

**OTHER**

Restatement Second on Contracts, § 159(c) ....................................14

## NATURE AND STAGE OF PROCEEDINGS

Market America, Inc.'s ("Market America") Complaint (D.I. 1) was filed on July 7, 2009, alleging four counts against both Defendant Google, Inc. ("Google") and Defendant LTech Consulting, LLC ("LTech") (collectively, "Defendants"):  (i) Fraudulent Inducement, (ii) Fraud, (iii) Failure of Essential Purpose and (iv) Unfair and Deceptive Trade Practices.  Both Defendants moved to dismiss all four counts of the Complaint on August 31, 2009, asserting, among other grounds, that the Complaint failed to identify with specificity who made the allegedly fraudulent statements at issue.  D.I. 17; D.I. 19.  Although the original Complaint contained sufficiently specific allegations to satisfy pleading standards of Rules 8 and 9(b), out of an abundance of caution Market America amended the Complaint on September 30, 2009, to identify the Google and LTech representatives who made the fraudulent statements and add further misrepresentations by Google and LTech personnel.  D.I. 22.  The Amended Complaint asserts claims for:  (i) Fraudulent Inducement; (ii) Fraud; (iii) Failure of Consideration; and (iv) Unfair and Deceptive Trade Practices.  Both Defendants have moved to dismiss Counts I, II and III of the Amended Complaint, but not Count IV. This is Market America's Answering Brief in Opposition to the Motions to Dismiss of both Defendants.

## SUMMARY OF ARGUMENT

1.     Market America's Amended Complaint alleges facts, accepted as true, sufficient to state claims for fraud and fraudulent inducement that are "plausible on its face" consistent with the pleading standards for Rule 8 of the Federal Rules of Civil Procedure set out in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Market America has pled specific, detailed facts that allow the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged.   The Defendants made specific and contemporaneous representations about the capabilities of *their own* technology, and those statements were flatly incorrect at the time made.  Market America relied on those representations. The Defendants' statements about the capabilities of the "Google Search Appliances" or "GSAs," – rack-mounted server units with loaded software – were not mere unfulfilled promises of future performance.  Rather, Defendants asserted their *existing* GSA server units could be linked together to perform sub-second searches of millions of products with sub-second response times, Market America relied on those representations, yet they turned out to be flatly wrong.

2.     Market America's Amended Complaint states a valid claim for rescission based upon failure of consideration under either Delaware or North Carolina law.  Market America paid Google and LTech in exchange for the installation of a GSA-based search system.  From the very beginning of the relationship, the Google and LTech search system did not work because the GSAs provided were technologically unable to perform the tasks for which they were purchased, and accordingly Google and LTech materially breached their contracts with Market America.  At the very least, the failure of Google and LTech to perform these basic terms of the contract warrants rescission of the contract and the return of each party to their status quo.

## STATEMENT OF FACTS

Market America is an internet retail business incorporated in North Carolina with its headquarters and principal place of business in North Carolina.  Amended Compl. ¶ 1.  Market America offers customers a unique shopping experience by providing them with an online shopping portal similar to Amazon.com, and in addition a personal "customer manager" who can guide their shopping experience, a concept known as One-to-One marketing.  Amended Compl. ¶ 6.  Customers shopping at Market America can choose from Market America-branded products as well as millions of products from other well-known retailers through Market America's "affiliate partner" program.  Amended Compl. ¶ 7.  In 2007, by leveraging its network of tens of thousands of Independent Distributors and with its product offerings rapidly expanding thanks to the affiliate partner program, Market America was poised to enter a phase of unprecedented growth.  Amended Compl. ¶¶ 6-7.

The creation of Market America's "Universal Shopping Cart" offers millions of customers a convenient one-stop shopping destination where purchases of both Market America products and affiliate partner products could be completed on the Market America site.  Amended Compl. ¶ 7.  Market America recognized that to fully realize the potential of the Universal Shopping Cart experience, the company needed to enhance its technological infrastructure to accommodate the tens of millions of affiliate products that were being loaded onto the site.  Amended Compl. ¶¶ 7-8.  Market America understood that it needed to implement a robust, scalable internal enterprise search system that could accommodate a high volume of search requests, access the millions of specific items available for purchase at the affiliate partner stores, and present search results in a quick timeframe consistent with the expectations of its customers.  Amended Compl. ¶ 8.

In November of 2007, Market America sought out the internet search technology giant Google to evaluate Google's capacity to assist Market America in developing an enterprise search system.  Amended Compl. ¶ 9.  Google Enterprise Sales Representative Robert Evanikoff responded

to Market America's inquiry.  Amended Compl. ¶ 9.  Google introduced Market America to LTech, a Google "partner" and member of the Google Enterprise Professional program, to potentially implement the new search solution.  Amended Compl. ¶ 10.  LTech presented Russ Young, Vice President of Business Development, as the company's point person for this project.  Amended Compl. ¶ 10.  In early discussions regarding project requirements, Market America emphasized to Google and LTech that it needed a search system that could handle 30 million individual products but was also scalable, such that multiple server units could be linked and the system could then handle up to 50 million products in 6 months and to 90 million products over time.  Amended Compl. ¶ 11.  Market America also made clear to Google and LTech that acceptable response times were a critical aspect of this search system.  Amended Compl. ¶ 12.

Google and LTech representatives unequivocally represented to Market America that their enterprise search products could provide a solution to meet the needs of Market America's quickly-expanding affiliate partner store offerings.  Amended Compl. ¶ 11.  Google represented to Market America that its Google Search Appliances, or "GSAs" – rack-mounted computer servers with loaded software – would have both the flexibility and advanced search capabilities to meet Market America's needs.  Amended Compl. ¶ 12.  In November of 2007, Google Enterprise Sales representative Robert Evanikoff, with the support of Google and LTech engineers, made statements and presented information to Market America personnel touting the GSAs' scalability and document capacity.  Amended Compl. ¶ 13.  Also, in response to a 45-point questionnaire about the scope and scale of Market America's needs, Evanikoff returned a document in which Google represented that to handle an increased number of products, multiple GSAs could be combined into clusters which would "function as a single unit even though they may contain multiple nodes."  Amended Compl. ¶ 13.  Two of Google's top engineers, Barry Fong and Nick Friedman, as well as LTech engineer Bill

Mers, were copied on Evanikoff's e-mail to Market America.  Amended Compl. ¶ 13.  In addition, on December 4, 2007, Evanikoff sent to Market America via e-mail a GSA "deployment guide" which represented that the GSA model GB8008 was "designed to handle document capacity needs of up to…30M."  Amended Compl. ¶ 13.

On December 18, 2007, Google Sales Engineer Gary Gies (who was sent to this meeting by Google's Manager of Enterprise Sales, Tom Mills) and LTech representatives Russ Young and Jason Keicher traveled to North Carolina to attend a meeting at Market America headquarters in Greensboro.  Amended Compl. ¶ 14.  These Google and LTech representatives evaluated Market America's enterprise search requirements during several sessions with Market America personnel from various departments.  Amended Compl. ¶ 14.  Understanding that scalability with sub-second response times was critical to Market America's needs, Gies, Young and Keicher assured the Market America team that the GSA clusters were scalable and could handle searches of over 30 million documents within 3 months and over 60 million products in 6 months, all with sub-second response times.  Amended Compl. ¶ 14.

As a result of this meeting in North Carolina and Google's prior assurances, Market America contracted with Google and LTech to purchase a series of GSAs and to install and implement a GSA-based enterprise search system.  Amended Compl. ¶¶ 16 and 20.  A Services Agreement was signed between Market America and LTech on February 1, 2008, and a License Agreement was signed between Google and Market America on February 4, 2008.  Amended Compl. ¶ 20.  Through an "LTech Google Search Appliance Form," Market America acquired one GSA model 800815MDNSTD and related equipment and services, for a price of almost $1 million, with an asserted capacity to handle 15 million documents, and an option to upgrade search capacity through the acquisition of additional licenses and additional GSA 8008 machines, with each additional

license or machine providing an additional 15 million document capacity to the search capabilities, up to a purported capacity of 90 million documents.  Amended Compl. ¶ 20.

Attached to the Services Agreement was a Statement of Work ("SOW") which memorialized the prior representations by Google and LTech by promising to implement and install an enterprise search system that would "leverage the speed and power of the Google Search Appliance [GSA] platform" and "generally serve search responses in sub one-second time frame."  Amended Compl. ¶ 21.  All services and testing were to be completed by June 15, 2008.  Amended Compl. ¶ 21.  Market America introduced its partnership with Google on February 8, 2008 at Market America's Leadership School, an event held at the American Airlines Arena in Miami and attended by over 20,000 individuals.  Amended Compl. ¶ 23.  Cyrus Mistry of Google, with an LTech representative onstage, addressed the crowd, announcing the relationship and the benefits that Google's search system would provide to Market America, its Independent Distributors and partners.  Amended Compl. ¶ 23.

In April of 2008, the GSA equipment was installed and tested at Market America's headquarters in North Carolina.  Amended Compl. ¶ 26.  Load testing of the system by LTech revealed response times in the 8 to 15 second range, far from the sub-second times promised by Google and LTech, and the system crashed at 15 queries per second.  Amended Compl. ¶ 26.  On June 25, 2008, 10 days after the date that the GSA-based system was supposed to be up and running, and with no effective solution at hand, Google's Manager of Enterprise Sales, Tom Mills, told Market America: "I can do nothing but apologize profusely for the delays on your project – I am truly sorry for that and promise you we are doing our best to find an effective solution."  Amended Compl. ¶ 27.  On June 26, 2008, Mr. Mills suggested that it would be necessary "to scale back a bit from the initial plan to ensure a reasonable level of performance."  Amended Compl. ¶ 28.

During a teleconference between the parties on or about June 30, 2008, Google's representatives admitted to Market America that its current GSA-based system was not scalable to 30, 60, or 90 million products as Google and LTech had previously represented, and that the parties would need to develop an alternative long term solution with a different hardware configuration. Amended Compl. ¶ 29.  Shortly thereafter, during another teleconference on July 8, 2008, Google representatives explicitly declared that its GSA could not perform any better and that Google's engineers would have to implement a different system.  Amended Compl. ¶ 30.  This system, however, was never developed.  Amended Compl. ¶ 32.

In July of 2008, Google sought to bridge the gap until a long term solution could be developed by proposing an interim search system that could handle 2 million products, well below the 30 million products initially promised by Google and LTech.  Amended Compl. ¶ 32.  This short term system was unveiled on August 8, 2008, in Greensboro, North Carolina at Market America's International Convention.  Amended Compl. ¶¶ 33-34.  Once again, Google's Cyrus Mistry assured the crowd of 20,000 distributors, customers, vendors and partners that Google would deliver and install an acceptable search system for Market America.  Amended Compl. ¶ 33.  Despite Mr. Mistry's assurances, the system crashed during a demonstration at the Convention and Market America was left with a broken search system that was worse than the search capabilities it already had before Google promised a better, GSA-based system.  Amended Compl. ¶ 34.  As a result of this failure, among other things, some existing affiliate partners stopped offering their products on Market America's site and other potential affiliate partners declined to sign on to the affiliate partner program.  Amended Compl. ¶ 35.

Throughout the second half of 2008, Market America expended additional sums on additional hardware, computer programming and internal resources by continuing to work with

Google and LTech to develop a solution that would live up to their initial promises.  Amended Compl. ¶ 37.  After several months, however, it became clear that Google and LTech were unable to meet their initial and ongoing promises and by the end of 2008, Google and LTech remained unable to provide Market America with the long term GSA search system that they had promised time and again.  Amended Compl. ¶¶ 37 and 39.  This utter failure left Market America with a severely limited, cobbled-together search system and on January 2, 2009, Market America informed Google that it was done wasting time and resources on failed attempts to implement a GSA-based enterprise search technology.  Amended Compl. ¶¶ 37 and 39.  On July 6, 2009, Market America tendered back possession of the GSAs to Google and LTech.  Amended Compl. ¶ 40.

## ARGUMENT

### I.  THE AMENDED COMPLAINT PLEADS FRAUD WITH SUFFICIENT PARTICULARITY

#### A.  Market America Has Alleged Facts Sufficient to Allow the Court to Draw an Inference that the Defendants are Liable for the Misconduct Alleged

Defendants argue that nothing in the Amended Complaint would justify an inference that Google and LTech committed any form of fraud.  They do not deny that they promised that the Google GSAs could process sub-second searches of the millions of documents Market America anticipated presenting on its site.  Rather, they argue that such statements, even if flatly wrong, and even when made by someone with vastly superior knowledge about the capacities of the technology in question, would not allow this Court to plausibly conclude that the Defendants might have known such statements were false when made, or at least that the Defendants were reckless as to their truth.

The Defendants base their argument on the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Yet these important cases do not alter pleading standards as much as Defendants suggest.  *See Twombly*, 127 S. Ct. at 1974 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  In the wake of these two decisions, the Third Circuit has provided additional clarity regarding the appropriate Rule 8 pleading standards and the general Rule 12(b)(6) standard.  *See Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008); *Fowler v. UPMC Shadyside*, 2009 WL 2501662, at *7 (3d Cir. Aug. 18, 2009).  To survive a motion to dismiss, a complaint must allege facts, accepted as true, to state a claim to relief that is "plausible on its face."  *Sun Microsystems, Inc. v. Versata Enterprises, Inc.*, 2009 WL 1904369, at *4 (D. Del. Jul. 1, 2009) (quoting *Twombly*, 127 S. Ct. at 1964).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Sun Microsystems*, 2009 WL 1904369, at *4 (quoting *Iqbal*, 129 S. Ct. at 1937).

The Supreme Court's "plausibility" standard requires a plaintiff to make a "showing" of an entitlement to relief. *Phillips*, 515 F.3d at 234; *Fowler*, 2009 WL 2501662, at *7; *Spear Pharmaceuticals, Inc. v. William Blair & Co., LLC*, 610 F. Supp. 2d 278, 283 (D. Del. 2009). Yet a "showing," the Third Circuit has explained, merely calls for plaintiffs to set forth enough facts in their complaint to raise a reasonable expectation that discovery will reveal evidence supporting the claim. *Spear Pharmaceuticals*, 610 F. Supp. 2d at 283 (citing *Phillips*, 515 F.3d at 234). In *Phillips*, The Third Circuit noted that while *Twombly* introduced a "plausibility paradigm" for evaluating the sufficiency of complaints, the Supreme Court did not intend to drastically alter the Rule 8 or Rule 12(b)(6) framework. *Phillips*, 515 F.3d at 230. The Supreme Court repeatedly emphasized throughout the *Twombly* opinion that it was not adopting or applying a "heightened pleading standard" of specifics nor imposing a probability requirement. *Phillips*, 515 F.3d at 233 (citing *Twombly*, 127 S. Ct. at 1964, 1965, 1973 n. 14, 1974). Specifically, after *Twombly*, plaintiffs still are not required to present detailed factual allegations in support of their complaint so long as they gave defendants fair notice of their claim and the facts that supported it. *Spear Pharmaceuticals*, 610 F. Supp. 2d at 283 (citing *Phillips*, 515 F.3d at 230-31).

The Third Circuit formulated the post-*Twombly* pleading standard as "'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S. Ct. at 1965); *Sun Microsystems*, 2009 WL 1904369, at *4. There must be some showing sufficient to justify moving the case beyond the

pleadings to the next stage of litigation.  *Phillips*, 515 F.3d at 234-35.  The "plausibility" determination will be "a context specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Fowler*, 2009 WL 2501662, at *7 (quoting *Iqbal*, 129 S. Ct. at 1950).

Applying *Twombly*, *Iqbal* and *Phillips* to the facts of this case demonstrates that Market America's Amended Complaint states a plausible claim for relief and should not be dismissed.  The Amended Complaint unequivocally alleges that Google and LTech, just prior to contracting with Market America, made specific misrepresentations about a contemporaneous fact:  that GSAs could be linked into clusters with the capacity to handle certain transaction volumes at certain speeds, when in fact they did not.  *See Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *7 (Del. Ch. Dec. 23, 2008) (finding that "[t]o support a claim for fraud, the putative misrepresentation must concern either a past or contemporaneous fact or a future event that falsely implies an existing fact.").  In addition, the Amended Complaint specifies that these fraudulent statements regarding the capacity of the GSAs were made by Google and LTech personnel "[a]t a meeting at Market America headquarters" held in December 2007 after evaluating Market America's enterprise search needs.  Amended Compl. ¶ 14.  The specificity of the facts and allegations in Market America's pleadings give Google and LTech more than fair notice of Market America's fraud claims and the underlying facts supporting them.  *Phillips*, 515 F.3d at 230-31.

In addition, Market America has satisfied Rule 8 by plausibly alleging that Google and LTech knew their statements were false or were reckless with regard to their truth or falsity.  As Google readily admits (Opening Brief at 10, n. 7, D.I. 27), knowledge and state of mind are not subject to Rule 9(b)'s heightened pleading standard for fraud.  *See Sun Microsystems*, 2009 WL 1904369, at *8 (Rule 9(b) states that "malice, intent, knowledge…may be alleged generally").  This

is especially true where the requisite factual information is peculiarly within the defendants' knowledge or control. *In re Rockefeller Center Properties, Inc. Securities Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008) (holding that generally alleging intent is sufficient under Rule 9(b), especially where the specific facts as to the misrepresentations are within defendants' control).

Market America is alleging that the Google and LTech representatives present at the December 18th meeting, and those who made representations prior to that meeting, could not have had a reasonable basis to believe that specific representations about the speed, capacity and scalability of the GSA appliances were true. These were statements about the capabilities of *their own technology*. The subject of the fraudulent statements – the capacity and ability of the GSAs to be linked into clusters and handle high transaction volumes with sub-second response times – was peculiarly within the Defendants' knowledge or control at the time the statements were made. The plausibility standard does not require Market America to know better than Google and LTech the nature and extent of Google and LTech's own technological offerings. When Google and LTech made representations about the capabilities of their own GSA technology, it was plausible to infer that both Defendants knew the truth or falsity or recklessly disregarded the truth or falsity of their representations at the time the statements were made. The fact that these statements were flatly wrong at the time they were made resulted in significant damages to Market America, as it worked in vain for months with Google and LTech to make the GSA system perform tasks it inherently did not have the capacity to handle.

Consistent with the pleading standard of Rule 8, the facts alleged raise a reasonable expectation that discovery will reveal evidence further supporting Market America's claim. *Phillips*, 515 F.3d at 230-31. Discovery will show exactly what the Google and LTech representatives

present at the December 18th meeting, Google Sales Engineer Gary Gies and LTech representatives Russ Young and Jason Keicher, knew about the scalability and the capabilities of the GSA appliances at the time they made their misrepresentations, and on what internal Google or LTech information that understanding was based.

Market America has substantiated its legal theory of fraud with factual allegations about the date, place, nature and substance of the fraudulent statements made by Google and LTech about their own technological capabilities. This substantiation elevates Market America's fraud claim from one that is merely "theoretically viable" to one that is "plausible" on its face. *In re Rockefeller Center*, 311 F.3d at 216. Accordingly, the facts pled by Market America constitute enough heft to show a "plausible" claim for relief and justify moving the case beyond the pleadings stage and into discovery. *See Fowler*, 2009 WL 2501662, at *7 (finding that although "not as rich with detail as some might prefer," a complaint pleading how, when and where the alleged misconduct took place set forth sufficient facts to support a "plausible" claim under the standards announced in *Twombly* and *Iqbal*).

### B.   Defendants' Statements about the Capabilities of the GSAs were Contemporaneous Statements about the Capabilities of their Technology, not Unfulfilled Promises of Future Performance

Both Google and LTech argue that Market America is wrongfully attempting to turn a garden variety breach of contract action into a fraud claim. Google correctly notes that the Statement of Work (an exhibit to the Services Agreement between Market America and LTech) references a search "solution" that will be "designed and developed" by LTech. (Opening Brief at 16.) Google stresses that the long period of cooperation between Google, LTech and Market America belies any intent on the part of the Defendants to defraud Market America. Google suggests an "obvious alternative explanation," namely that "Market America sought a complicated, customized search

technology and despite everyone's best efforts, it could not perform as hoped."  (Opening Brief at 15.)

It certainly is true that for Google's and LTech's misrepresentations to be actionable under either Delaware or North Carolina law, they must have not been mere promises of the possibility of future performance, but actual contemporaneous statements of fact.[1]  But Defendants' misrepresentations did not relate to future promises of performance; they related to "present circumstances" – the present capabilities of the GSAs, and the capacity of those devices to be employed scalably to search tens of millions of documents with sub-second response times.  Market America did not think it was signing on to a technology development effort; it contracted with Google and LTech because the Defendants said flatly and unequivocally their GSA appliances would work – specifically, (1) that the devices would be scalable (in that several devices could be linked together) to enable searches of the tens of millions of products Market America wanted to offer to visitors on its site (Amended Complaint at ¶ 13); and (2) that, when linked together, they could perform at sub-second response times.  (Amended Complaint at ¶ 14.)

The GSAs that the Defendants provided were installed and they were a dramatic failure. (Amended Compl. ¶ 26.)  The appliances performed not with "sub-second" response times, as was

---

[1]  *See Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *7 (Del. Ch. Dec. 23, 2008)(misrepresentation is actionable if it concerns "either a past or contemporaneous fact or a future event that falsely implies an existing fact.")  *See also* Restatement Second on Contracts, § 159(c) ("An assertion must relate to something that is a fact at the time the assertion is made in order to be a misrepresentation.  Such facts include past events as well as present circumstances but do not include future events."); *White Sewing Mach. Co. v. Bullock*, 76 S.E. 634, 639 (N.C. 1912) ("As a general rule, false representations upon which fraud may be predicated must be of existing facts, or facts which previously existed, and cannot consist of mere promises or conjectures as to future acts or events…unless the promise includes a misrepresentation of existing facts, or the statement is as to some matter peculiarly within the speaker's knowledge, and he makes the statement as a fact"); *Spartan Leasing Inc. v. Pollard*, 400 S.E.2d 476, 478 (N.C. App. 1991) (holding that "the fraudulent misrepresentation must be of a subsisting or ascertainable fact").

promised, but with response times in the 8 to 15 second range.  (Amended Compl. ¶ 26.)  In the

world of internet search, the difference between sub-second response times and 8 to 15 second

response times is the difference between keeping a visitor to a site satisfied and having that visitor

leave for another site with adequate search capacity.  Despite a clear promise that the GSAs were

scalable, as Google later admitted (in its Brief on its Motion to Dismiss the original Complaint), the

GSA technology "*was not scalable* and could not perform as hoped."  (Opening Brief of Defendant

Google Inc. in Support of Its Motion to Dismiss at 14 D.I. 18.) (Emphasis supplied.)[2]

It is certainly true that after the initial dramatic failure of the installed GSAs, Market America

struggled for months with Google and LTech to find a workable enterprise search system using the

GSAs.  Amended Compl. ¶¶ 27-34.  But that long struggle is not what Market America was

promised – it was promised scalable GSAs with the capacity to handle tens of millions of products

---

[2]  Although Google made this admission in its initial Motion to Dismiss, Google excised its admission that the GSAs are not in fact scalable in the correlating section of its Brief to dismiss the Amended Complaint.  (Opening Brief at 17:  "the GSA system just could not perform as hoped.")  This redaction is ironic because Google makes much of Market America's changes between the original Complaint and the Amended Complaint.  (Opening Brief at 15.)  But of course changes from the original Complaint to the Amended Complaint cannot serve as a basis to *dismiss* that Amended Complaint.  When an amended complaint is filed, the previous complaint is wiped out and the operative complaint is the most recently filed version.  *See Snyder v. Pascack Valley Hospital*, 303 F.3d 271, 276 (3d Cir. 2002) (stating, "[a]n amended complaint supersedes the original version in providing the blueprint for the future course of a lawsuit."); *Scherer v. Pennsylvania Dept. of Corrections*, 2007 WL 4111412, at *47 (W.D. Pa. Nov. 16, 2007) ("An amended pleading supersedes the original and the original pleading no longer serves any function in the case"); *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204-1205 (7th Cir. 1998) (holding that it is impermissible for a court to look outside the amended pleadings to a plaintiff's prior pleadings; "[i]t is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered *functus officio*.").  If certain facts or admissions from the original complaint become *functus officio*, they cannot be considered by the court on a motion to dismiss the amended complaint.  *Kelley*, 135 F.3d at 1204-1205; *Hibernia National Bank v. Carner*, 997 F.2d 94, 101 (5th Cir. 1993).  A court "cannot resuscitate these facts or allegations when assessing whether the amended complaint states a viable claim."  *Kelley*, 135 F.3d at 1205 ("Any facts that [plaintiff] had pleaded in his first two complaints were effectively nullified for 12(b)(6) purposes when he filed his Second Amended Complaint.").

with sub-second response times.  (Amended Complaint at ¶¶ 13, 14.)  At the time that Defendants made that promise, they either knew or should have known that their own proprietary technology could not deliver, no matter how much development effort was expended.

## II.   THE AMENDED COMPLAINT ASSERTS A VALID CLAIM FOR RESCISSION BASED UPON FAILURE OF CONSIDERATION

Despite Defendants' selective reading of the Amended Complaint, Market America's allegations form a basis for a valid claim for rescission of the contract for lack of consideration under both North Carolina and Delaware law.  Where a contract fails for lack of consideration, the plaintiff is entitled to rescind that contract.  *See United Engineers & Constructors, Inc. v. Babcock & Wilcox Co.*, 1993 WL 50309, at *3 (Del. Ch. Feb. 11, 1993) ("the courts of this State, of course, can grant rescission for a number of reasons," including "failure of consideration"); *Univ. of North Carolina v. Shoemate*, 437 S.E.2d 892, 895 (N.C. App. 1994) ("[u]nder North Carolina law, where a contract is impossible to perform at the time it is made, consideration between the parties is lacking, and the contract is void *ab initio*"); *Christenson v. Friendly Ford Sales, Inc.*, 169 S.E.2d 542, 544 (N.C. App. 1969) (A buyer may rescind a contract for failure of consideration if, at the time of the sale, the subject of the contract could not be used for the purposes for which it was intended.).  An unjustified failure to perform basic terms of a contract warrants rescission.  *Sheehan v. Hepburn*, 138 A.2d 810, 812 (Del. Ch. 1958).

A plaintiff is entitled to a decree restoring him to the status held by him prior to entering into the contract, and both parties must be placed in status *quo ante*.  *Id.*; *Shoemate*, 437 S.E.2d at 895.  In an action for rescission, the court has the authority to enter an order restoring the plaintiff to his original position by awarding monetary damages or the return of the property of which he has been deprived.  *Reybold Venture Group XI-A, LLC v. Atlantic Meridian Crossing, LLC*, 2009 WL 143107, at *4 (Del. Super. Jan. 20, 2009).

Defendants argue that a claim for rescission cannot be asserted because the terms of the contracts between Market America and the Defendants did not require Google or LTech to provide a GSA that would search between 30 and 90 million products in under a second.  Yet in taking such a crimped view of the scope of Google and LTech's promises, Defendants focus solely on the few allegations under the heading of Count III and improperly disregard the allegations in earlier paragraphs which were referenced and incorporated into Count III.  (Am. Compl., ¶¶ 20-21, 57.); *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-323, 127 S.Ct. 2499, 2509 (2007) (when evaluating the sufficiency of a claim in a 12(b)(6) context, courts must consider the complaint in its entirety and not merely scrutinize individual allegations in isolation); *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 272-273 (3d Cir. 2009) ("Each case will present a different configuration of factual allegations, and it is the composite picture, not the isolated components, that judges must evaluate in the last instance.").

There are three documents that collectively represent the agreement amongst the parties: a Licensing Agreement between Google and Market America (D.I. 27-3, Exh. B), a "LTech Google Search Appliance Order Form" (D.I. 27-4, Exh. C) signed by Market America and LTech but whose terms are incorporated into and made a part of the License Agreement between Google and Market America;[3] and a Services Agreement between LTech and Market America (D.I. 27-2, Exh. A). Google argues that because none of these documents contains a term explicitly requiring the GSA system to search between 30 to 90 million products in under a second, Market America's claim for rescission must fail.  (Opening Brief at 18.)

---

[3]  The first paragraph of the License Agreement states:  "This Agreement and the corresponding purchasing document by which You order certain Products ("Order Form") from LTech Consulting, LLC, a Google authorized reseller ("Reseller") set forth the terms and conditions under which You may license and use such Products."  *See also* License Agreement, paragraph 11 (integration clause integrating the License Agreement and the Order Form).

This is wrong for two reasons:  first, even taking the explicit terms of the various agreements and assuming they are unambiguous, Google and LTech failed to substantially perform their obligations under those terms and Market America's Amended Complaint fairly alleges this. Second, to the extent Google and LTech's obligations under the contracts are ambiguous, those obligations should be informed by the contemporaneous statements of the Defendants, and Google and LTech unequivocally failed to perform what was promised in those contemporaneous statements.

### A.   Google and LTech Failed to Substantially Perform Their Explicit Obligations Under the Agreements

The Order Form promises one GSA model 8008 with an asserted capacity to handle 15 million documents.  It also provided that Market America can purchase additional GSA 8008 boxes each providing an additional 15 million documents to Market America's search capacity up to a purported 90 million documents.  (Order Form, D.I. 27-4, Exh. C.)  According to the Services Agreement entered into between Market America and LTech, GSAs can purportedly return searches of its documents in sub one-second response times.  (Services Agreement, Statement of Work at 2, D.I. 27-2, Exh. A.)  Google and LTech provided to Market America a GSA model 8008.  (Amended Complaint at ¶20.)  That unit was installed at Market America and it "showed response times in the 8 to 15 second range ...."  (Amended Complaint at ¶26.)  At no point thereafter was Google or LTech able to provide a system with even the 15 million capacity that a single GSA was supposed to provide.  (Amended Complaint at ¶¶ 29-34.)  Through this failure, both Google and LTech failed to substantially perform the terms of their agreements, and a claim for rescission lies. *Demarie v. Neff*, 2005 WL 89403, at *4 (Del. Ch. Jan 12, 2005).

Market America does not know whether a software or a hardware defect lies at the root of this failure.  However, under the terms of the License Agreement, the Order Form and the Services

Agreement, Market America was initially to be supplied with a GSA unit with 15 million document capacity (Order Form at 1, D.I. 27-4, Exh. C), with certain proprietary software pre-installed from Google (License at 1.1, D.I. 27-3, Exh. B), and the machine was supposed to "generally serve search responses in sub one-second time frame. (Services Agreement, Statement of Work at para. 3, D.I. 27-2, Exh. A). Either through software defects or hardware defects, Google and LTech utterly failed to supply even this limited level of performance. The single GSA as installed performed in the 8 to 15 second range. (Amended Complaint at ¶ 26.) A suggested interim replacement system could only handle two million records. (Amended Complaint at ¶ 32.) Accordingly, both Google and LTech failed to substantially perform their obligations under the Agreements, making rescission fully warranted.

**B.      Google and LTech Failed to Substantially Perform Their Obligations Under the Agreements as Clarified by Their Contemporaneous Statements**

While Google and LTech could not even install a system that could handle 15 million records, in fact they promised much more – they promised that GSAs could be linked together to handle up to 90 million records, all with sub-second response times. (Amended Complaint at ¶¶ 13, 14, 20.) The meaning of the provisions in the agreements are clarified by the prior representations made by Google and LTech sales and engineering personnel about the GSA system's scalability and response times, an indispensable requirement for Market America. (Amended Complaint at 14.)[4] In

---

[4]   When interpreting a disputed contract term, in some circumstances the court may consider extrinsic evidence "bearing upon the objective circumstances relating to the background of the contract." *U.S. West, Inc. v. Time Warner Inc.*, 1996 WL 307445, at *10 (Del. Ch. June 6, 1996). Such evidence may include statements made during the course of the negotiation, courses of prior dealings between the parties, the parties' conduct, the business circumstances surrounding the negotiation and practices in the relevant trade or industry. *Appriva S'holder Litig. Co., LLC v. ev3, Inc.*, 937 A.2d 1275, 1291 (Del. Supr. 2007); *PharmAthene, Inc. v. SIGA Tech., Inc.*, 2008 WL 151855, at *11-12 (Del. Ch. Jan. 16, 2008); *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 834-835 (Del. Ch. 2007); *U.S. West*, 1996 WL 307445, at *10. The prior history between the parties will aid the court by demonstrating "what an (objectively) reasonable party in the position of either bargainer would have understood the nature of the contractual rights and duties to be." *U.S.*

November of 2007, Google Enterprise Sales representative Robert Evanikoff, with the support of Google and LTech engineers, made statements and presented information to Market America personnel touting the GSAs' scalability and document capacity. Amended Compl. ¶ 13. Also, in response to a 45-point questionnaire about the scope and scale of Market America's needs, Evanikoff returned a document in which Google represented that to handle an increased number of products, multiple GSAs could be combined into clusters which would "function as a single unit even though they may contain multiple nodes." *Id.* Two of Google's top engineers, Barry Fong and Nick Friedman, as well as LTech engineer Bill Mers, were copied on Evanikoff's e-mail to Market America. *Id.*

On December 18, 2007, Google Sales Engineer Gary Gies (who was sent to this meeting by Google's Manager of Enterprise Sales, Tom Mills) and LTech representatives Russ Young and Jason Keicher traveled to North Carolina to attend a meeting at Market America headquarters in Greensboro. Amended Compl. ¶ 14. These Google and LTech representatives evaluated Market America's enterprise search requirements during several sessions with Market America personnel from various departments. *Id.* Understanding that scalability with sub-second response times was critical to Market America's needs, Gies, Young and Keicher assured the Market America team that the GSA clusters were scalable and could handle searches of over 30 million documents within 3 months and over 60 million products in 6 months, all with sub-second response times. *Id.* These representations clarify the promise in the Order Form that additional GSAs and licenses could be acquired to upgrade the document search capacity to "30 million in 3 months, 45 million in 6 months, 60 million in one year, 75 million in 14 months and 90 million in 16 months" (Order Form

---

*West*, 1996 WL 307445, at *10. In such a case, the court would enforce the objectively reasonable interpretation that emerges. *United Rentals*, 937 A.2d at 835.

at 1, D.I. 27-4, Exh. C.)  Google and LTech were promising this type of capacity all at sub-second response times through linked GSAs.  That was a promise that Google and LTech either knew or should have known was impossible to fulfill.

Taken as a whole, Market America's Amended Complaint sets out sufficient allegations demonstrating that Defendants' technology could not be used for the purposes for which it was intended and that Defendants failed to perform the basic terms of the agreement.  These failures go to the heart of the parties' agreement and deprive Market America of the benefit of its bargain.  Market America contracted with Google and LTech to produce and implement a GSA-based enterprise search system for use in its internet retail business.  Market America has expended a large amount of time and money in an attempt to implement and achieve this search system but Google and LTech have completely and utterly failed to deliver a workable search system in return.  Therefore, due to this failure of consideration, Market America is entitled to be placed in status quo through rescission.  Despite their failure to deliver on any of their promises, Defendants have been compensated according to the agreement.  Market America should, at the very least, be entitled to receive its money back and to return to Google and LTech its useless equipment.  Market America has already tendered the equipment from the failed search system.  Google and LTech should now be required to return Market America to its status quo by reimbursing the money expended for the equipment and attempted implementation of this failed system.

## **CONCLUSION**

For the foregoing reasons, Market America respectfully requests that the Court deny both Defendants' Motions to Dismiss Counts I, II and III of the Amended Complaint.

**MORRIS JAMES LLP**

_/s/ Richard K. Herrmann_
Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
Matthew F. Lintner (#4371)
Jody C. Barillare (#5107)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com
mmatterer@morrisjames.com
mlintner@morrisjames.com
jbarillare@morrisjames.com

Dated:  November 2, 2009

_Attorneys for Plaintiff_
_MARKET AMERICA, INC._