# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARKET AMERICA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 1:09-cv-00494-GMS |
| | ) |
| GOOGLE INC. and | ) |
| LTECH CONSULTING, LLC, | ) |
| | ) |
| Defendants. | ) |

## REPLY BRIEF OF DEFENDANT GOOGLE INC. IN SUPPORT OF ITS
## MOTION TO DISMISS COUNTS I, II AND III OF THE AMENDED COMPLAINT

OF COUNSEL:

Amy B. Ginensky
Andrea Toy Ohta
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750
ginenskya@pepperlaw.com
toyohtaa@pepperlaw.com

Dated: November 12, 2009

M. Duncan Grant (Del. Bar No. 2994)
Maria L. Panichelli (Del. Bar No. 5047)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Tel: (302) 777-6500
Fax: (302) 421-8390
grantm@pepperlaw.com
panichellim@pepperlaw.com

*Attorneys for Defendant Google Inc.*

#11670181 v5

-i-

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 2

    A. The Court Should Dismiss Market America's Fraud Claims Because Market America Has Not Alleged Facts That Plausibly Support The Scienter Element.... 2

    B. The Court Should Dismiss Market America's Rescission Claim Because Market America Has Not Identified A Single Contractual Term In Which Google Guaranteed That A GSA-Based System Would Search Up To 90 Million Documents In Under A Second. ................................................................ 9

III. CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) ............................................................................. *passim*

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) ..........................................................2, 4, 9

Brown v. Buschman Co., No. Civ. A. 99-108 (GMS), 2002 WL 389139 (D. Del. Mar. 12, 2002) ..................................................................................................................................3

Crosbie v. Endeavors Techs., Inc., No. SA CV 08-1345 AHS, 2009 WL 3464135 (C.D. Cal. Oct. 22, 2009) .............................................................................................................3, 6

Dewey v. Volkswagen AG, 558 F. Supp. 2d 505 (D.N.J. 2008) ........................................................5

Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228 (Del. 1997) ................................9

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) ............................................................5, 6

Panther Partners, Inc. v. Ikanos Commc'ns, Inc., 538 F. Supp. 2d 662 (S.D.N.Y. 2008) ...............6

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) .........................................4, 5, 6

Redbox Automated Retail LLC v. Universal City Studios LLP, Civil No. 08-766 (RBK), 2009 WL 2588748 (D. Del. Aug. 17, 2009) ........................................................................8

In re: Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198 (3d Cir. 2002) ..................................5

Shapiro v. UJB Fin. Corp., 964 F.2d 272 (3d Cir. 1992) ................................................................5

Sun Microsys., Inc. v. Versata Enters., 630 F. Supp. 2d 395 (D. Del. 2009) ..................................6

United States v. Lloyds TSB Bank PLC, 639 F. Supp. 2d 326 (S.D.N.Y. 2009) ............................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ..............................................................................................................................5, 6

Fed. R. Civ. P. 9(b) ............................................................................................................................5

#11670181 v5

I.        **INTRODUCTION**

As evidenced by its claims and underscored by its Answering Brief, Market America studiously is trying to avoid the contracts into which it entered and convert a garden-variety contract dispute into a fraud case.  By skirting Google's argument that Market America has failed to allege facts to support scienter and instead stressing that it has alleged the misrepresentation element with sufficient specificity, Market America asks the Court to blur the line between fraud and contract by ignoring scienter, a key element of a fraud claim.  But without factual allegations that plausibly support an inference that at the time the statements were made the defendants knew the statements were false or were recklessly indifferent as to their truth, Market America's allegations are entirely consistent with the inference that the defendants acted in good faith and did not knowingly or recklessly make false statements.

Indeed, the documents setting forth the agreement between Market America and LTech, as well as the factual scenario alleged, further support this alternative inference.  The documents clearly state that a search solution will be "designed and developed by LTech, in concert with Market America's technology and business teams," and provide a procedure for "testing" the GSA-based system and then accepting or rejecting it depending on whether it conforms to written specifications.  (Services Agreement ¶ 19, attached as Ex. A to Opening Br., D.I. #27; Statement of Work at 2, attached as Ex. A to Services Agreement.)  Also, Market America alleges that Google publicly promoted its GSA technology at two Market America events that were each attended by over 20,000 individuals, and that the technology crashed while Google demonstrated it at one of the events.  (Am. Compl., D.I. #22, ¶¶ 23, 33, 34.)  Based on Market America's allegations, it is not plausible to infer that, for less than one million dollars in

fees,[1] Google would risk litigation or stake its reputation and knowingly expose itself to public embarrassment by announcing that a GSA solution would meet Market America's expectations, when it knew all along that this was untrue. Given the more likely, obvious alternative explanation that Market America knowingly sought a complicated, customized search technology, which, in the end, simply could not be configured to search up to 90 million documents in under a second, Market America has failed to nudge its fraud claims "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1972-74 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951-52 (2009).

In addition, although Market America argues that it has stated a rescission claim because the defendants "failed to substantially perform the terms of their agreements" (e.g., Answering Br., D.I. #30, at 18), the claim fails because Market America has not identified a single term in the License Agreement or Order Form in which Google guaranteed that a GSA solution would search up to 90 million documents in under a second.

Therefore, Google respectfully requests that the Court dismiss Counts I, II and III of the Amended Complaint.

II.  **ARGUMENT**

    A.  **The Court Should Dismiss Market America's Fraud Claims Because Market America Has Not Alleged Facts That Plausibly Support The Scienter Element.**

Although Market America amended its Complaint and twice briefed the issue, it is still the case that the only allegations supporting the scienter element are the bald assertions that "[d]efendants knew these representations to be false when they were made or the representations were made with a reckless indifference to their truth or falsity." (Am. Compl.,

---

[1] See Order Form at 1, attached as Ex. C to Opening Br., D.I. #27.

D.I. #22, ¶¶ 44, 52.)  Rather than squarely addressing Google's pointed argument that these allegations are insufficient and that Market America has not alleged *facts* that plausibly support the *scienter element*, Market America counters with three arguments, none of which address the core deficiency in its pleading.

**First**, Market America argues that it has clearly and specifically alleged that the defendants made misrepresentations about a contemporaneous fact and that it has offered details about when and where the statements were made and the nature of those statements.[2] (Answering Br., D.I. #30, at 11, 13, 14.)  Market America's allegations relating to the misrepresentations are irrelevant, as alleging facts to support one of the necessary elements does not somehow obviate the requirement to adequately plead scienter to support a fraud claim.  See, e.g., Brown v. Buschman Co., No. Civ. A. 99-108 (GMS), 2002 WL 389139, at *9 (D. Del. Mar. 12, 2002) (dismissing fraud claim because plaintiff failed to allege facts to support scienter); Crosbie v. Endeavors Techs., Inc., No. SA CV 08-1345 AHS, 2009 WL 3464135, at *9, *10 (C.D. Cal. Oct. 22, 2009) (dismissing common law fraud claim because "[d]isregarding all conclusory averments," the complaint lacked allegations that the defendants "knew their statements regarding the investment transaction were false" and "plaintiffs simply describe the representations made and state why they were untrue").  It is quite telling that in the seven pages dedicated to rehabilitating its fraud claims, Market America points to only three paragraphs of the Amended Complaint to support its fraud claims, none of which directly relate to scienter.

---

[2] Market America's statement that the defendants "do not deny that they promised that the Google GSAs could process sub-second searches of the millions of documents Market America anticipated presenting on its site" is wrong. (Answering Br., D.I. #30, at 9.)  Google has consistently denied that it represented that a GSA-based search solution would search up to 90 million documents in under a second.  (Opening Br., D.I. #27, at 3 n.3.)

(Answering Br., D.I. #30, at 11, 14-16.)[3]  Scouring the entire Amended Complaint, there are no factual allegations that directly relate to scienter.

If Market America's view of the law were correct — that alleging a misrepresentation could, by itself, support a fraud claim — the scienter element would be rendered meaningless.  There would cease to be a legal distinction between knowing or reckless misrepresentations and negligent or good faith misrepresentations.[4]  But because in the case of fraud, the actionable "misconduct" is a ***knowing*** or ***reckless*** misrepresentation, not just a misrepresentation, Market America has not alleged facts from which one could reasonably infer that the defendants are liable for fraud, as required to state a facially plausible claim.  Iqbal, 129 S. Ct. at 1949.

The precedent cited by Market America makes clear that the failure to plead an element is fatal.  In Phillips v. County of Allegheny, the court emphasized the importance of pleading factual support for each element:  "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required ***element***'" and "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the ***necessary element***.'"  515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1965) (emphasis added).  The court then carefully and separately considered the sufficiency of the plaintiff's allegations as to

---

[3] These three paragraphs relate to the misrepresentation element and allege that the defendants made certain statements and the statements were false because the GSA-based search technology did not have a sub-second response time in load testing. (Am. Compl., D.I. #22, ¶¶ 13, 14, 26.) Market America also cites to paragraphs 27 through 34 of the Amended Complaint to argue that although the parties worked for months to find a workable solution, Market America was not promised a "long struggle." (Answering Br., D.I. #30, at 15.)

[4] Indeed, throughout its Answering Brief, Market America continues to blur the distinction between fraud and other claims. For example, Market America appears to be invoking a negligence standard by arguing that the defendants "could not have had a reasonable basis to believe that specific representations about the speed, capacity and scalability of the GSA appliances were true" and that the defendants "should have known" that the GSA could not meet Market America's requirements. (Answering Br., D.I. #30, at 12, 16, 21.)

*each* of the four elements of the plaintiff's state-created damage claim. Id. at 235-43. As to all but two of the defendants, the court found that the claim was not sufficiently pled because the plaintiff failed to allege facts that supported one or more elements of the claim. Id. at 235, 236, 239. As in Phillips, Market America's pleading is clearly deficient.[5]

**Second**, Market America argues that it "has satisfied Rule 8 by plausibly alleging that Google and LTech knew that their statements were false or were reckless with regard to their truth or falsity." (Answering Br., D.I. #30, at 11.) It suggests that its bald assertions are sufficient because knowledge may be alleged generally, especially where the facts are peculiarly within the defendants' knowledge or control. (Answering Br., D.I. #30, at 11, 12.)[6] However, as recognized by the United States Supreme Court, that knowledge and state of mind may be alleged generally does not mean that a plaintiff can "evade the less rigid — though still operative — strictures of Rule 8" and "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a

---

[5] Market America argues that it has satisfied its pleading obligations. (Answering Br., D.I. #30, at 10, 11.) To the extent that Market America is suggesting that it has done this by simply providing Google with a general statement of the claims asserted against it, even Market America's cases make clear that "simple notice" is not enough to survive a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009); accord Phillips, 515 F.3d at 232 (citing Twombly, 127 S. Ct. at 1965 n.3).

[6] Neither In re: Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198 (3d Cir. 2002), nor Dewey v. Volkswagen AG, 558 F. Supp. 2d 505 (D.N.J. 2008), supports Market America's argument that it has sufficiently pled scienter. First, they are simply inapposite. While courts may relax ***Rule 9(b)'s*** heightened pleading standard when the requisite facts are peculiarly within the knowledge or control of the defendant, scienter is not subject to Rule 9(b). Neither Rockefeller, Dewey, nor any other case that Market America has identified allows for the relaxation of Rule 8's already-more-lenient standard. Second, Rockefeller makes clear that "even when the defendant retains control over the flow of information, 'boilerplate and conclusory allegations'" — like Market America's — "'will not suffice" and the plaintiff still "must accompany [its] legal theory with factual allegations that make [its] theoretically viable claim plausible." 311 F.3d at 216 (quoting In re: Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)) (emphasis omitted). Third, to warrant the relaxation of Rule 9(b)'s pleading standard, a plaintiff must allege in the complaint itself that the necessary factual information is in the defendant's exclusive control ***and*** set forth its efforts to obtain that information. Shapiro v. UJB Fin. Corp., 964 F.2d 272, 285 (3d Cir. 1992). Market America has done neither.

motion to dismiss." Iqbal, 129 S. Ct. at 1954. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

In fact, the cases cited by Market America acknowledge that conclusory statements and mere recitations of the elements of a claim are insufficient. Fowler, 578 F.3d at 210 ("After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting Iqbal, 129 S. Ct. at 1949)); Sun Microsys., Inc. v. Versata Enters., 630 F. Supp. 2d 395, 405-07 (D. Del. 2009) (emphasizing that defendant's allegations were sufficient to state a fraud counterclaim because defendant pled "facts, not upon information and belief, that support its allegations regarding Sun's intent and knowledge"); Phillips, 515 F.3d at 233 (stating that it is not "sufficient to allege mere elements of a cause of action").

**Third**, Market America argues (but does not allege) that, because the defendants' statements relate to their own technology and the "plausibility standard does not require Market America to know better than Google and LTech the nature and extent of Google and LTech's own technological offerings," it is plausible to infer that the defendants knew their statements were false or were reckless as to their truth.[7] (Answering Br., D.I. #30, at 12.) If that argument were sufficient, every routine commercial dispute involving a product that failed to work would support a fraud claim because the seller always has knowledge about its product that is superior to the buyer's knowledge. Cf. Panther Partners, Inc. v. Ikanos Commc'ns, Inc., 538 F. Supp. 2d 662, 673 (S.D.N.Y. 2008) (noting that it "is simply inadequate pleading" for the plaintiff to ask

---

[7] In deciding a motion to dismiss, the court considers the allegations in the complaint, not new facts alleged in a brief. See Phillips, 515 F.3d at 245; Crosbie, 2009 WL 3464135, at *3.

"the Court to assume that Defendants *must* have known" of the defect in their semiconductor chip "because something did in fact occur later"). Accepting such an argument would further blur the line between fraud and a garden-variety contract dispute, such as the one here. Moreover, it is important to remember that the relevant inquiry is not who knew more about the technology — rather, it is whether the defendants knew that their statements were false when made or were reckless as to their truth.

Further, as the United States Supreme Court has said, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. Here, it would make no sense for Google to knowingly or recklessly misrepresent that a GSA-based system would search up to 90 million documents in under a second. Doing so would expose Google to litigation risk and undermine its reputation. That this defies common sense is further supported by Market America's own allegations: Market America alleges that Google publicly promoted its GSA-based system and that system's capacity to meet Market America's search expectations at Market America's Leadership School and International Convention, events that were each attended by over 20,000 individuals, and that the GSA technology crashed while Google demonstrated it at the International Convention. (Am. Compl., D.I. #22, ¶¶ 23, 33, 34.) Common sense counsels against inferring that, for less than one million dollars in fees, Google would knowingly risk public embarrassment and damage to its reputation. See United States v. Lloyds TSB Bank PLC, 639 F. Supp. 2d 326, 342 (S.D.N.Y. 2009) (finding it implausible under Iqbal that "a substantial international bank, bearing an historic name and presumably wishing to maintain a global reputation for integrity and honorable dealing," would

-7-

knowingly conspire to commit fraud when its only financial incentive was "to maintain the patronage of a fee-generating client").

Finally, Market America's Services Agreement and Statement of Work with LTech support the obvious alternative explanation: that Market America sought a complicated, customized technology; despite everyone's best efforts, that technology just could not search up to 90 million documents in under a second; and, at most, Google was overly optimistic. The Statement of Work clearly states that a GSA-based solution is to be "designed and developed" by LTech and Market America. (Statement of Work at 2.) Also, the Services Agreement includes a procedure for "Testing and Acceptance" of the GSA-based system, which allows Market America to reject the system if it does "not conform to the applicable Statement of Work or other written specifications." (Services Agreement ¶ 19.) These documents make clear that Market America did not purchase an out-of-the-box product and that any remedy that Market America has lies in contract.[8]

Thus, while it is theoretically *possible* that the defendants "might have known" (Answering Br., D.I. #30, at 9) that their alleged statements were false or were recklessly indifferent as to their truth, such sheer speculation is not enough to satisfy the plausibility standard, especially where the alleged facts, documents, and context suggest otherwise. Iqbal, 129 S. Ct. at 1949. Despite its attempt to distance itself from, and avoid, the contracts governing this commercial relationship, Market America should not be allowed to transform a garden-variety contract dispute into a fraud case by ignoring the facts and the scienter requirement.

---

[8] Market America's claim that "it did not think it was signing on to a technology development effort" and characterization of the defendants' statements as relating to the present capabilities of the GSAs (Answering Br., D.I. #30, at 14) is belied by its contracts with LTech (the Services Agreement and Statement of Work). Even at the motion-to-dismiss stage, the Court need not accept the truth of a characterization contradicted by documents integral to the complaint. See Redbox Automated Retail LLC v. Universal City Studios LLP, Civil No. 08-766 (RBK), 2009 WL 2588748, at *5-7 (D. Del. Aug. 17, 2009).

#11670181 v5

Quite simply, Market America has not "nudged" its "claims across the line from conceivable to plausible," and, thus, the fraud claims should be dismissed.  <u>Twombly</u>, 127 S. Ct. at 1974.

        B.    **The Court Should Dismiss Market America's Rescission Claim Because Market America Has Not Identified A Single Contractual Term In Which Google Guaranteed That A GSA-Based System Would Search Up To 90 Million Documents In Under A Second.**

Market America also fails to address Google's key argument as to the rescission claim:  that Google did not guarantee in the License Agreement or Order Form that a GSA-based system would search up to 90 million products in under a second.  In an apparent attempt to distract the Court from the fact that Google never made any contractual representations about GSA search speed, Market America states that the License Agreement, Order Form, and Services Agreement "collectively represent the agreement amongst the parties."  (Answering Br., D.I. #30, at 17.)  Crucially, however, the Statement of Work — the only document that includes any reference to search speed — and the Services Agreement — which incorporates the terms of the Statement of Work — were between only Market America and LTech.  (Services Agreement at 1, 5; Statement of Work at 1, 22.)  Google was not a party to these contracts and they do not "represent" Google's "agreement" with anyone.  Thus, because no contractual provision obligated Google to guarantee a GSA solution with a sub-second search speed, Google's failure to do so could not have constituted a failure to substantially perform its contractual obligations and cannot support a rescission claim.

Taking a different tack, Market America also urges the Court to read a sub-second search speed requirement into its written contractual relationship with Google by looking to extrinsic evidence, including statements allegedly made during the contract negotiations.  But it is a basic principle of contract interpretation that a court may not look to extrinsic evidence unless the contract provision at issue is ambiguous.  <u>See</u> <u>Eagle Indus., Inc. v. DeVilbiss Health</u>

-9-

Care, Inc., 702 A.2d 1228, 1232 (Del. 1997) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity.").[9] Here, Market America has not identified any such ambiguous provision in the License Agreement or Order Form. Thus, this Court should decline Market America's request to consider extrinsic evidence and should confine itself to the four corners of the License Agreement and Order Form to determine Google's contractual obligations.

III. **CONCLUSION**

For the foregoing reasons and the reasons set forth in its Opening Brief, Google respectfully requests that the Court grant its motion and dismiss Counts I, II and III of the Amended Complaint.

Respectfully submitted,

| OF COUNSEL: | /s/ *Maria L. Panichelli* |
|---|---|
| | M. Duncan Grant (Del. Bar No. 2994) |
| Amy B. Ginensky | Maria L. Panichelli (Del. Bar No. 5047) |
| Andrea Toy Ohta | PEPPER HAMILTON LLP |
| PEPPER HAMILTON LLP | Hercules Plaza, Suite 5100 |
| 3000 Two Logan Square | 1313 N. Market Street |
| Eighteenth and Arch Streets | P.O. Box 1709 |
| Philadelphia, PA 19103-2799 | Wilmington, DE 19899-1709 |
| Tel: (215) 981-4000 | Tel: (302) 777-6500 |
| Fax: (215) 981-4750 | Fax: (302) 421-8390 |
| ginenskya@pepperlaw.com | grantm@pepperlaw.com |
| toyohtaa@pepperlaw.com | panichellim@pepperlaw.com |
| | |
| Dated: November 12, 2009 | *Attorneys for Defendant Google Inc.* |

---

[9] Market America apparently acknowledges this basic principle, and none of the extrinsic-evidence cases it cites are to the contrary. (See Answering Br., D.I. #30, at 18 ("[T]o the extent Google and LTech's obligations under the contracts are ambiguous, those obligations should be informed by the contemporaneous statements of the Defendants.").)

## **CERTIFICATE OF SERVICE**

I, Maria L. Panichelli, hereby certify that on November 12, 2009, a true and correct copy of the foregoing Reply Brief of Defendant Google Inc. in Support of Its Motion to Dismiss Counts I, II and III of the Amended Complaint was filed with the Clerk of Court using CM/ECF, which will send notification to the following counsel of record:

> Matthew F. Lintner
> Richard K. Herrmann
> Morris James LLP
> 500 Delaware Avenue, Suite 1500
> Wilmington, DE 19801
>
> *Attorney for Plaintiff Market America, Inc.*
>
>
> Michael F. Bonkowski
> Cole, Schotz, Meisel, Forman & Leonard, P.A.
> 500 Delaware Avenue, Suite 1410
> Wilmington, DE 19801
>
> *Attorney for Defendant LTech Consulting, LLC*

>> /s/ *Maria L. Panichelli*
>> Maria L. Panichelli (#5047)

#11670181 v5