IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARKET AMERICA, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 09-494-GMS |
| GOOGLE, INC., LTECH CONSULTING, LLC and GETTHEJOB DEVELOPMENT SERVICES, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM

### I. INTRODUCTION

On July 7, 2009, the plaintiff, Market America, Inc. ("Market America"), filed this diversity action against Google, Inc. ("Google") and LTech Consulting, LLC ("LTech") (together, "the defendants") for: fraudulent inducement (Count I), fraud (Count II), failure of essential purpose (Count III), and unfair and deceptive trade practices (Count IV). (D.I. 1.) Google and LTech filed motions to dismiss pursuant to Rule 12(b)(6), and Market America amended its complaint in accordance with Rule 15(a)(1)(A) on September 30, 2009. (D.I. 22.) Market America's amended complaint retained Counts I, II, and IV and alleged rescission for failure of consideration in lieu of failure of essential purpose as its Count III claim. (Id.) On October 19, 2009, the defendants filed motions to dismiss Counts I, II, and III of Market America's amended complaint pursuant to Rule 12(b)(6) (D.I. 26; D.I. 28), and the court granted the defendants' motions to dismiss (D.I. 35). Market America filed a second amended complaint

on September 23, 2010, adding GetTheJob Development Services, LLC as a defendant. (D.I. 38.) Presently before the court is Google's motion for judgment on the pleadings (D.I. 45) and LTech's motion for judgment on the pleadings or, in the alternative, for summary judgment (D.I. 47). For the reasons that follow, the court will grant the defendants' motions.

## II. BACKGROUND[1]

The following facts are taken from Market America's second amended complaint. (D.I. 38.) Market America is an Internet marketing and product brokerage company that pioneered an online shopping portal similar to Amazon.com. (Id. at ¶ 7.) Market America's technology enables customers using the site to maintain an "online contact or guide" on the Internet, which aims to facilitate the creation of a "preeminent online shopping destination." (Id.) In November 2007, Market America contacted Google to assess whether Google could assist it in developing an "internal capability for its visitors to search the retail offerings available on the affiliate partner stores" by implementing a search system using Google Search Appliances ("GSAs"). (Id. at ¶¶ 10, 13.) Google responded to Market America's inquiry and introduced it to LTech, a Google partner. (Id. at ¶ 11.)

Market America entered into a Services Agreement with LTech on February 1, 2008, pursuant to which LTech agreed to design and develop a GSA-based search system for Market America. (Id. at ¶ 21.) On February 4, 2008, Market America entered into a License Agreement with Google which outlined the terms and conditions of Market America's use of Google's hardware and software. (Id.) A review of the agreements reveals that both contain Delaware

---

[1] The court refers to its previous decision in this matter for a more thorough factual background. (D.I. 35); *Market Am., Inc. v. Google, Inc.*, C.A. No. 09-494-GMS, 2010 WL 3156044 (D. Del. Aug. 9, 2010).

2

choice of law provisions.[2] (D.I. 46, Ex. A, Ex. B.) Specifically, the Services Agreement states:

> This Agreement shall be governed and construed in accordance with the laws of the State of Delaware without regard to the conflict of laws provisions thereof, and the state and federal courts located in that state shall have exclusive jurisdiction of the parties for the purposes of adjudicating all disputes that may arise under this Agreement.

(Id., Ex. A at 4.) Likewise, the License Agreement between Market America and Google states:

> This Agreement and any claim or dispute of whatever nature arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware and the federal U.S. laws applicable therein, without giving effect to any choice of law principles that would require the application of the laws of a different state.

(Id., Ex. B at 6.)

After executing the agreements, Market America purchased a GSA for one million dollars to handle fifteen million documents, with the option of upgrading this capacity through the acquisition and installation of additional licenses and GSA machines. (D.I. 38 at ¶ 21.) As of April 2008, however, the GSA system showed search response times well above the sub-second timeframe that Google and LTech allegedly agreed to provide and would crash at fifteen queries per second. (Id. at ¶ 27.) Google's representatives guaranteed Market America that Google would devote resources to resolving the deficiencies, but each attempted solution failed. (Id. at

---

[2]Generally, on a motion to dismiss pursuant to Rule 12(b)(6), a court may not consider material outside of the pleadings. The court makes an exception, however, when a document becomes "integral to or explicitly relied upon in the complaint." *In re Burlington Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (superseded by statute on other grounds)). The analysis is the same for a motion for judgment on the pleadings. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010); *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004). Here, the court finds that Market America has made the Services Agreement and the License Agreement "integral" parts of the complaint. Thus, it considers them for the purpose of deciding the defendants' motion to dismiss.

¶¶ 28-35.) With Market America's independent distributors and partners losing confidence in the GSA-based search system, Market America informed Google on January 2, 2009 that it would not proceed with the implementation of the GSA-based enterprise search capacity. (Id. at ¶¶ 36-39.) As a result of Google and LTech's inability to produce a GSA system scalable to ninety million products, Market America alleges that it "has incurred and continues to incur significant costs in developing an alternative enterprise search capacity." (Id. at ¶ 42.)

## III. STANDARD OF REVIEW

The defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). When deciding a Rule 12(c) motion for judgment on the pleadings based on an allegation that the plaintiff has failed to state a claim, the motion "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 995 (Jan. 18, 2011). That is, the court must view all facts and inferences drawn from the pleadings in the light most favorable to the non-moving party. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 213, 220 (3d Cir. 2001). The motion can be granted only if no relief could be afforded under any set of facts that could be proved. *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). However, the court need not adopt conclusory allegations or statements of law. *Paoli v. Delaware*, C.A. No. 06-462-GMS, 2007 WL 4437219, at *1 (D. Del. Dec. 18, 2007) (citing *In re Gen. Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119, 1125 (D. Del. 1988)).

## IV. DISCUSSION

In support of their motions, the defendants contend that the choice of law provisions contained in the Services Agreement and License Agreement mandate the application of Delaware law to all disputes arising under the Agreements. (D.I. 46 at 8; D.I. 48 at 9-10.) Applying Delaware law, the defendants contend that Market America fails to state a claim for unfair and deceptive trade practices under either the Delaware Consumer Fraud Act ("CFA") or the Delaware Deceptive Trade Practices Act ("DTPA"). (D.I. 46 at 10; D.I. 48 at 10-11.) Specifically, the defendants contend that Market America fails to allege any wrongful conduct occurring in Delaware, as required to state a claim under the CFA. (D.I. 46 at 10-11; D.I. 48 at 11.) Moreover, the defendants contend that the DTPA does not apply to relationships between businesses and customers such as Google's relationship with Market America in the instant action, and Market America has failed to assert a basis for injunctive relief as required by the statute. (D.I. 46 at 11-13; D.I. 48 at 11.)

In response, Market America contends that judgment on the pleadings is inappropriate where, as here, there are factual matters to resolve regarding choice of law. (D.I. 51 at 10-11.) Specifically, Market America contends that the Delaware choice of law provisions in the agreements does not apply to the unfair and deceptive conduct alleged in the complaint because the conduct complained of occurred outside the scope of the agreements. (Id. at 11.) According to Market America, North Carolina has the most significant relationship to the wrongful conduct alleged in the complaint, and the claim for unfair and deceptive trade practices is not defective in any way under North Carolina law. (Id. at 11-26.)

The court concludes that Delaware law applies to Count IV of Market America's second amended complaint. The License Agreement between Market America and Google contains a choice of law provision clearly stating that Delaware law shall govern the terms of the agreement. Although the parties agree that the allegations of Count IV sound in tort, the court concludes that the choice of law provision in the License Agreement is broad enough to encompass disputes beyond those arising from the construction of the contract itself. *See Gloucester Holding Corp. v. U.S. Tape and Sticky Prods., LLC*, 832 A.2d 116, 123-24 (Del. Ch. 2003) ("There are certain circumstances where courts have held that a broad choice of law clause in a contract could encompass tort claims that relate to contract formation."). Specifically, the License Agreement states that Delaware law governs "[t]his Agreement and any claim or dispute of whatever nature arising out of or relating to this Agreement," indicating that the parties intended Delaware law to govern all disputes arising between the parties regarding this transaction, whether sounding in contract or tort.

The choice of law provision in the Services Agreement, while not as broad in scope, also supports the application of Delaware law to the claim for unfair and deceptive trade practices sounding in tort. The choice of law provision provides that Delaware courts shall have exclusive jurisdiction "for the purposes of adjudicating **all** disputes that may arise under this Agreement," and it does not contain language explicitly limiting its reach to contractual disputes. (D.I. 46, Ex. A at 4) (emphasis added); *see Organ v. Byron*, 435 F. Supp. 2d 388, 392 (D. Del. 2006) (distinguishing clauses limiting their reach to the "'rights of the parties' derived from the contract" from those extending to "all . . . aspects of the Agreement"). Delaware law provides that a choice of law provision such as the one included in the Services Agreement "shall

6

conclusively be presumed to be a significant, material and reasonable relationship with this State and shall be enforced whether or not there are other relationships with this State." 6 *Del. C.* § 2708(a).

Moreover, applying Delaware law to Count IV will prevent bifurcation of pure contract claims and other claims in accordance with Delaware public policy. *See Pharmathene, Inc. v. Siga Techs., Inc.*, C.A. No. 2627-VCP, 2008 WL 151855, at *7 (Del. Ch. 2008) (quoting *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1032-33 (Del. Ch. 2005), *aff'd*, 894 A.2d 407 (Del. 2005) (a contract "should not be interpreted in a crabbed way that creates a commercially senseless bifurcation between pure contract claims and other claims that arise solely because of the nature of the relations between the parties created by the contract.")). As the court explained in *Abry Partners*:

> When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship. We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and businesslike resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship. Nor do we believe such a person would reasonably desire a protracted litigation battle concerning only the threshold question of what law was to be applied to which asserted claims or issues. Indeed, the manifest purpose of a choice-of-law clause is precisely to avoid such a battle.

*Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1048 n.25 (Del. Ch. 2006) (quoting *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1154 (Cal. 1992)).

The parties agree that, under Delaware law, two statutory provisions apply to Count IV of the second amended complaint: Delaware's Deceptive Trade Practices Act ("DTPA") and

Consumer Fraud Act ("CFA"). Market America concedes that, "due to the narrow scope of Delaware's Deceptive Trade Practices Act and Consumer Fraud Act, Market America does not have a claim under either statute." (D.I. 51 at 20.) Specifically, Count IV fails to allege that an unfair or deceptive practice occurred in Delaware as required by the CFA. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 117 (Del. 2006). Count IV also fails under the DTPA because the claim involves a vertical, customer-seller relationship between Market America and Google or LTech as opposed to the horizontal relationships between various business interests that the DTPA was intended to redress. *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993). Moreover, Market America did not assert a basis for injunctive relief in Count IV of its second amended complaint as required under the DTPA. *See Lynch v. Coinmaster USA, Inc.*, 614 F. Supp. 2d 494, 504 (D. Del. 2009). Having determined that Delaware law governs the dispute with the defendants, the court concludes that judgment on the pleadings is appropriate with respect to Market America's claim for unfair and deceptive trade practices against the defendants.[3]

## V. CONCLUSION

For the reasons stated above, the defendants' motions for judgment on the pleadings (D.I. 45; D.I. 47) are granted. An appropriate order shall issue.

Dated: April 19, 2011

CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Because the court grants the defendants' motions for judgment on the pleadings, the court need not reach LTech's alternative argument in favor of summary judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| MARKET AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-494-GMS |
| | ) | |
| GOOGLE, INC., LTECH CONSULTING, | ) | |
| LLC and GETTHEJOB DEVELOPMENT | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The defendants' motions for judgment on the pleadings (D.I. 45; D.I. 47) are GRANTED.

Dated: April 19, 2011

CHIEF, UNITED STATES DISTRICT JUDGE